# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JENNIFER LIVINGSTON, KIRSTEN BAIN, TAVI BURROUGHS, KENIA CHAVEZ, CHRISTINA GUARINO, KATHARINE LAZZARA, JESSICA MAPLES, SHANNON MARKEY, DONNA RUCH, JAMIE SNEVELY, LISETTE VENEGAS, and MARY YOUNGREN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, a municipal corporation, <br><br> Defendant. | No. 16-10156 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiffs Jennifer Livingston, Kirsten Bain, Tavi Burroughs, Kenia Chavez, Christina Guarino, Katharine Lazzara, Jessica Maples, Shannon Markey, Donna Ruch, Jamie Snevely, Lisette Venegas, and Mary Youngren, all once female candidates for Fire Paramedic positions in the Chicago Fire Department ("CFD"), allege that Defendant City of Chicago (the "City") discriminated against them on the basis of their sex in the hiring process for the Fire Paramedic position, in violation of Title VII. The City moves to dismiss Bain, Ruch, Youngren, and Venegas (the "Non-Filing Plaintiffs") because they have not exhausted their administrative remedies, as required by Title VII. Because the Non-Filing Plaintiffs can rely on the single-filing rule to bring their claims based on the charges filed by other plaintiffs in this case, the Court denies the City's motion to dismiss.

# BACKGROUND[1]

Plaintiffs are all licensed and experienced paramedics whom the City hired as candidate Fire Paramedics for the CFD. Fire Paramedics provide services, including emergency medical services, to residents of the City. They are not responsible for fire-suppression activities.

This is not the City's first time defending against litigation for sex discrimination in its process for hiring Fire Paramedics, and a brief history on past litigation provides useful context for understanding Plaintiffs' claims. The City hires Fire Paramedics through a selection process that includes "(a) screening applicants for a valid, current paramedic license issued by the Illinois Department of Health; (b) drug screening; (c) a background check; (d) a fit-for-duty certification by a CFD medical officer; and (e) upon satisfactory completion of those first four steps, a multi-week course of training and instruction at the City's Fire Training Academy." Doc. 1 ¶ 16. In 2000, the City added a requirement that Fire Paramedic candidates pass a physical test before they could proceed to the Training Academy. The City used the physical test this way for over a decade, until multiple women who were disqualified from being Fire Paramedics because of this test sued the City alleging discrimination under Title VII—the Seventh Circuit ultimately found

---

[1] The facts in the background section are taken from Plaintiffs' complaint and are presumed true for the purpose of resolving the City's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to Plaintiffs' claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.*

Plaintiffs did not attach the Filing Plaintiffs' EEOC charges to the complaint. The City submits these charges as exhibits to the motion to dismiss. Because the Court must consider the allegations in the charges to determine whether the Non-Filing Plaintiffs may rely on those charges to pursue their own claims and because the claims discussed in the charges are referenced in the complaint and central to their claims, they are properly before the Court. *See Davis v. Central Can Co.*, No. 05 C 1563, 2006 WL 2255895, at *4 (N.D. Ill. Aug. 4, 2006) (collecting cases).

that the study that formed the basis for imposing the physical test was unreliable and invalid. *See Ernst v. City of Chicago*, 837 F.3d 788, 802 (7th Cir. 2016). During this litigation, in 2014, the City stopped using the original physical test and began using a new test, referred to in the complaint as the "PPAT." All Plaintiffs passed the PPAT and made it into the Academy.

However, at the time it began administering the PPAT, the City also added additional physical testing requirements that it administered during the Academy and required candidates to pass before graduating from the Academy. The City imposes these new physical requirements primarily through two tests: a "Lifting and Moving Sequence" and a "Step Test." In 2014 and 2015, 100 percent of men who took these tests passed, while only 79 percent of women passed.

Looking at Plaintiffs specifically, Livingston, Snevely, Guarino, Burroughs, Lazzara, Markey, Maples, Chavez and Ruch took and did not pass both the Lifting and Moving Sequence and the Step Test. The City subsequently fired these women. Bain, Venegas, and Youngren had slightly more unique experiences. Bain took and did not pass the Step Test. The City's medical officer, Dr. William Wong, threatened to permanently disqualify her from the CFD if she did not quit, and Bain alleges that the City constructively discharged her. CFD's director of training required Venegas to perform an *ad hoc* "lunge" test, and the City terminated her on the basis of this performance. Finally, Youngren was injured while taking the Step Test, and the City placed her on unpaid Suspended Assignment as a result. Suspended Assignment means that the City will allow her to complete Academy training following medical clearance—she has received medical clearance and is waiting for the opportunity to retake the Step Test.

Livingston, Snevely, Guarino, Burroughs, Markey, and Chavez (the "Filing Plaintiffs") filed timely charges of classwide sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC provided them with notices of Right to Sue, and the Filing

Plaintiffs brought this complaint within 90 days of receipt of those notices. Lazzara, Bain, Maples, Ruch, Venegas, and Youngren did not file EEOC charges. However, the City does not challenge Lazzara and Maples' participation in this case at this time—only that of Bain, Ruch, Venegas, and Youngren.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The City argues that the Court should dismiss the Non-Filing Plaintiffs from the case because they have not exhausted their administrative remedies. Failure to exhaust is an affirmative defense that plaintiffs need not address in their complaints—however, "[d]ismissal is appropriate in cases where it is clear from the face of the complaint that the plaintiff has failed to exhaust administrative remedies." *Bibbs v. Sheriff of Cook County*, No. 10 C 7382, 2011 WL 5509556, at *3 (N.D. Ill. Nov. 8, 2011). According to the City, that is the case in this situation—

Plaintiffs acknowledge in the complaint that the Non-Filing Plaintiffs did not file EEOC charges and instead rely on the charges filed by other plaintiffs. Doc. 1 ¶ 11.

To bring a Title VII suit, a plaintiff must have exhausted her administrative remedies by filing a timely EEOC charge and receiving a right to sue letter. *Allen v. City of Chicago*, 828 F. Supp. 543, 555 (N.D. Ill. 1993). Certain exceptions to this rule exist: under the single-filing rule or "piggybacking" doctrine, "an individual who has not exhausted his administrative options may join a lawsuit filed by another individual who has administratively exhausted." *Simpson v. Cook County Sheriff's Office*, No. 18-cv-553, 2018 WL 3753362, at *2 (N.D. Ill. Aug. 8, 2018); *see also Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1017–18 (7th Cir. 1988) ("[P]laintiffs who have not timely filed a charge can rely on the timely charge of another plaintiff in a class action."); *Rogers v. Ford Motor Co.*, No. 12 C 7220, 2013 WL 3895279, at *3 (N.D. Ill. July 26, 2013) ("The 'single-filing' doctrine (also known as the 'piggybacking' doctrine), allows an individual to join a lawsuit filed by another individual who exhausted his or her administrative remedies.").[2] To qualify for the single-filing rule, the EEOC charge must note the "collective nature of the discrimination complained of," and the Non-Filing Plaintiffs' claims must arise out of the same or similar discriminatory conduct committed during the same period as the conduct described in the EEOC charge on which they seek to piggyback their claims. *Simpson*, 2018 WL 3753362 at *2. "Although other courts have stated the standard in

---

[2] The City cites *Horton v. Jackson County Board of County Commissioners*, 343 F.3d 897 (7th Cir. 2003), for the proposition that the single-filing rule may not apply at all outside of the class action context. Although the *Horton* Court was most approving of the use of the single-filing rule in class actions, it stopped short of limiting the exception to that context. *Id.* at 900–01; *see also Chicago Reg'l Council of Carpenters v. Pepper Constr. Co.*, 32 F. Supp. 3d 918, 926 (N.D. Ill. 2014) ("The court, however, stopped short of limiting the rule to class actions."). The Seventh Circuit questioned whether the Supreme Court would limit the doctrine to class actions—it did not suggest that the Supreme Court already imposed that limitation. *Horton*, 343 F.3d at 900. Moreover, in *Horton* the circuit court was considering whether the single-filing rule was useful in actions with only two plaintiffs—here, where there are 12 plaintiffs, the situation is more similar to that of *Anderson*, where the Seventh Circuit allowed some plaintiffs to rely on the single-filing rule in a 39-plaintiff case. *Anderson*, 852 F.2d at 1017–18.

5

somewhat different terms, the emphasis is always on the policies underlying the Title VII requirements." *Zuckerstein v. Argonne Nat. Lab.*, 663 F. Supp. 569, 574 (N.D. Ill. 1987). "[T]he reason behind the requirement that allegations not contained in an EEOC charge cannot be contained in the complaint is that the defendant must have notice of the charge, and the EEOC must have the opportunity to investigate and conciliate the charge." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989).

In addition to making specific arguments why each of the Non-Filing Plaintiffs' claims do not reasonably relate to the filing Plaintiffs claims, the City makes two generalized arguments: (1) that it was only provided notice of allegations of discrimination relating to the Step Test and the Lifting and Moving Sequence, and (2) that the Non-Filing Plaintiffs' claims concern issues with the CFD Medical Division, which are not raised in the charges filed by the other plaintiffs.

The City's first generalized argument falls apart upon review of the Chavez charge, which shows that it encompasses more than simply the Step Test and Lifting and Moving Sequence. The Chavez charge mentions physical tests other than the Step Test and Lifting and Moving Sequence three different times. Doc. 101-1 ¶¶ 6 (stating that the City terminated or constructively discharged women "because they allegedly could not keep up with certain fitness tests, such as push-ups, 'up-and-overs,' burpees, jumping jacks, etc."), 24 (asserting that "the City has also adopted a new practice of terminating women or forcing them to quit academy training through the use of fitness tests such as sit ups, 'up and overs,' and burpees"), 25 (same).

In its reply, the City argues that these descriptions are too vague to encompass the Non-Filing Plaintiffs' claims regarding physical tests other than the Step Test and Lifting and Moving Sequence (Bain's claim references jump squats and Venegas' claim references lunges). In other

words, the City's position is that the charge would have to name the exact physical test the Non-Filing Plaintiff complains of for her claim to be reasonably related to the charge. This position is too narrow. *See Bennett v. Schmidt*, No. 96 C 9614, 2000 WL 1161073, at *5 (N.D. Ill. July 14, 2000) ("Because most EEOC charges are drafted by laypersons, there is significant leeway in determining whether an EEOC charge encompasses the claims in a complaint alleging Title VII violations"). While it is true that "[a]ny additional alleged act of discrimination can always be fit in and become part of an overall general pattern of discrimination," *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010), the Non-Filing Plaintiffs' claims here are far more related to the allegations in the Chavez charge than merely fitting into a general pattern of discrimination. Rather, the Chavez charge complains that the City used various *ad hoc* physical tests, such as push-ups, burpees, and jumping jacks, during the Academy as a pretense for disqualifying women from the program on the basis of their sex. Lunges and jump squats administered during the Academy and used to disqualify women fall squarely within that allegation. The City emphasizes that "some specificity in a[n EEOC] charge is not a 'mere technicality,'" *Bennett*, 2000 WL 1161073, at *6, but *Bennett* involved two entirely different policies; the only thing uniting the two policies was that the plaintiff alleged that both were discriminatory. Here, on the other hand, the Chavez charge describes the conduct that the Non-Filing Plaintiffs complain of and provides examples—although the specific physical tests that Bain and Venegas complain of are not described in the Chavez charge, the conduct that they describe is substantially similar (if not the same) as the conduct Chavez describes. This is enough to satisfy the goals of administrative exhaustion: Chavez put the City on notice that she believed its use of unnecessary physical tests, both in the curriculum (like the Step Test and Lifting and Moving Sequence) and

7

*ad hoc*, had a discriminatory purpose and disparate impact on female candidates for the Fire Paramedic position, and the EEOC had the opportunity to investigate and conciliate this charge.

The City's arguments regarding the CFD Medical Division are equally as unpersuasive. Each of the Non-Filing Plaintiffs brings a claim against the City for imposing a physical test (the Step Test, Lifting and Moving Sequence, or one of the *ad hoc* tests described above) during the Academy and using the results of that test to block women from graduating from the Academy. The Non-Filing Plaintiffs who were injured during the test (and, like the other plaintiffs, prevented from continuing through the Academy) complain of the same discriminatory conduct that the Filing Plaintiffs describe: use of a physical test during Academy as a means to prevent women from becoming Fire Paramedics. That they were injured by the tests rather than immediately fired (and thus interacted with the Medical Division) does not take away from the fact that the underlying discriminatory conduct alleged is the same. Both the Filing and Non-Filing Plaintiffs allege that the City imposed unnecessary physical tests during Academy with the purpose of creating barrier to women who sought employment as Fire Paramedics and thus discriminated against them based on their sex.

## I.     Ruch's Claim

The City argues that Ruch's claim does not arise out of the same or similar conduct as the Filing Plaintiffs' claims because the City terminated her on August 3, 2016, eight months after the most recently filed charge. It also argues that, because Ruch's termination occurred in 2016 and the latest charge was filed in December 2015, Ruch's claim would not be timely.

Both of these arguments boil down to one question: is the discriminatory conduct linking Ruch's claim to Chavez's charge (1) the administration of the physical tests during the Academy, or (2) the decision to ultimately fire both women? If the former, the two claims clearly stem

from the same or similar discriminatory conduct and occurred in the same time period. Looking to the Chavez charge, the actual "conduct" of which Chavez complains is the use of the physical tests to create a barrier to women graduating from the Academy. Put plainly, "[t]he City of Chicago has discriminated against me and other women similarly situated by its adoption, use, administration, and reliance upon unvalidated and discriminatory physical tests." Doc. 101-1 ¶ 23. This is also the discriminatory conduct that Ruch describes in the complaint: "[t]he principal focus of this complaint is the City's discriminatory use of physical testing of candidate Fire Paramedics that is not job related and operates as a barrier to employment for women." Doc. 1 ¶ 2. Both women allege that the City prevented them from graduating from the Academy because of their performance on its physical tests and that either the City imposed the test with a discriminatory intent or that the test had a disparate impact on women. This is the discriminatory conduct that forms the basis for their claims. As such, Ruch's claim is reasonably related to Chavez's charge, and the conduct she complains of occurred during the same time period as the conduct described in the Filing Plaintiffs' charges.

## II. Bain's Claim

The City contends that the Court should dismiss Bain because she alleges that the City constructively discharged her, rather than terminated her, as a result of her performance on the Step Test. This argument contains the same flaws as the City's arguments regarding Ruch: the relevant conduct at issue here is the imposition of the physical tests as a barrier to women graduating from the Academy. Looking to the complaint, Bain alleges that she "took and did not pass the 'Step Test' as a candidate Fire Paramedic in the CFD Training Academy. In October 2014, the City's medical officer, Dr. William Wong, threatened to permanently disqualify her from the CFD if she did not quit. The City constructively discharged her from her employment,

9

because of her sex." Doc. 1 ¶ 39. Plaintiffs add in their response brief that the City constructively discharged Bain after she failed the Step Test and became "fatigued during 'jump squats.'"[3] Doc. 101 at 14.

According to the City, Bain's claim lapsed in August 2015, and her claims of constructive discharge are not the same or similar discriminatory conduct as the Filing Plaintiffs who had filed charges by that time. "[T]he single filing rule cannot revive a stale claim." *Riley-Jackson v. Casino Queen, Inc.*, No. 07-CV-0631-MJR, 2011 WL 797493, at *4 (S.D. Ill. Feb. 27, 2011). In Illinois, a Title VII plaintiff must file an EEOC charge within 300 days of the alleged unlawful employment practice. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 463 (7th Cir. 2016). Bain alleges that the City constructively discharged her in October 2014, and Chavez filed her charge on December 21, 2015. The City is correct that Bain cannot rely on Chavez's charge using the single-filing rule. However, Livingston, Burroughs, Guarino, and Snevely all had filed their EEOC charges within 300 days of October 2014. All of these women complained in their charges that the City used the Step Test and Lifting and Moving Sequence (referred to as the "carry test" in the charges) to prevent women from graduating from the Academy. For example, Livingston's charge describes "[t]he use of these tests to eliminate more than half the women" in her class at the Academy, and complained that because of those tests, she was not "permitted to graduate." Doc. 99-1, Ex. A ¶¶ 13–14. This is the same discriminatory conduct that Bain protests in the complaint: use of the Step Test to prevent her from graduating from the Academy and becoming a fire paramedic. Bain's claims, like most of the other plaintiffs in this case, rest on the theory that the City used the Step Test and Lifting and Moving Sequence as a pretense for

---

[3] Although this allegation is not contained in the complaint, it is consistent with the allegations of the complaint and adds detail to the facts surrounding Bain's constructive discharge. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (a party may "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings").

10

preventing her from continuing on through the Academy, because of her sex. Thus, Bain can properly rely on Livingston, Burroughs, Guarino, and Snevely's charges for her claim regarding the Step Test using the single-filing rule because her claim involves the same or similar conduct in the same time period as those charges. The City's argument is correct, however, to the extent that Bain cannot bring claims regarding *ad hoc* tests (such as jump squats) administered during the Academy—only Chavez's charge detailed those *ad hoc* tests, and Bain cannot rely on Chavez's charge. Bain may use the single-filing rule to proceed on her claim regarding the Step Test.

### III. Youngren's Claim

The City argues that Youngren's claim does not arise out of the same or similar conduct because Youngren alleges she was injured on the Step Test and placed on "Suspended Assignment." The City further argues that the charges filed by the Filing Plaintiffs were insufficient to put the City on notice of Youngren's claim. This is more of the same: the City attempts to paint Youngren's claim as a claim against the CFD Medical Division, and thus distinct from the Filing Plaintiffs' charges. This is unpersuasive; Youngren's claim does not allege that the Medical Division discriminated against her through its suspended assignment policy, but rather that the City discriminated against her because of the discriminatory physical test that it required her to take to continue through Academy (the same test about which each of the Filing Plaintiffs complains). Despite the City's attempt to frame Youngren's claim differently, her claim, like all the other plaintiffs' claims, rests on the same allegations regarding the physical tests that the City imposed during the Academy.

The City cites *Geldon v. South Milwaukee School District* as support for its contention that Youngren's claim does not arise out of the same or similar conduct. Youngren's claim is

distinguishable from the *Geldon* plaintiff; in that case, Geldon alleged in her charge that the defendant discriminated against her when it decided not to hire her for a certain job. 414 F.3d 817, 820 (7th Cir. 2005). In her complaint, she tried to bring claims for the defendant's hiring decision regarding the job mentioned in the charge, and also of the defendant's hiring decision regarding a different job position. *Id.* The Seventh Circuit held that she only put the defendant on notice of discrimination claims for one job position and thus could not bring claims regarding the other position. *Id.* Here, the policy at issue is the same in the Filing Plaintiffs' charges as it is in Youngren's claim. The discriminatory conduct is the same. The problem is not with the City's suspended assignment policy, it is with the fact that Youngren alleges she would not have been injured (or have needed the suspended assignment policy) but for the discriminatory physical tests that the City required her to take to continue through the Academy. The Filing Plaintiffs put the City on notice that the Step Test requirement was discriminatory, and this claim is based on exactly that conduct. Thus, Youngren may rely on the single-filing rule to proceed with her claim.

## IV. Venegas' Claim

Finally, the City argues that Venegas' claim does not arise out of the same or similar conduct because Venegas' allegations are based on an *ad hoc* lunge test rather than the specific tests identified by all of the Filing Plaintiffs (the Step Test and Lifting and Moving Sequence). For the reasons discussed above, the Chavez charge sufficiently describes *ad hoc* physical tests, and so Venegas may use the single-filing rule to proceed on her claim.

## CONCLUSION

For the foregoing reasons, the Court denies the City's motion to dismiss [98].

Dated: January 14, 2019

_____
SARA L. ELLIS
**United States District Judge**