IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER LIVINGSTON, KIRSTEN BAIN, TAVI BURROUGHS, KENIA CHAVEZ, CHRISTINA VELASCO, KATHARINE LAZZARA, JESSICA MAPLES, SHANNON MARKEY, DONNA GRIFFIN, JAMIE SNEVELY, LISETTE VENEGAS, and MARY YOUNGREN<br><br>*Plaintiffs*,<br><br>v.<br><br>THE CITY OF CHICAGO, a municipal corporation,<br><br>*Defendant*. | Case No. 16 cv 10156<br><br>Hon. Sara L. Ellis<br><br>Magistrate Judge Young B. Kim |

**CITY OF CHICAGO'S RESPONSE IN OPPOSITION TO MOTION
TO COMPEL PRODUCTION OF DOCUMENTS REGARDING OTHER ACTS
OF SEX DISCRIMINATION IN THE ACADEMY**

The City of Chicago (the "City"), by its undersigned attorneys, for its response to Plaintiffs'

Motion to Compel Production of Documents Regarding Other Acts of Sex Discrimination in the

Academy (the "Motion"), states as follows:

## I. INTRODUCTION

The City and this Court find themselves in a familiar position. Despite several court orders

limiting the scope of discovery, well-founded and vindicated arguments from the City to limit

discovery, and lack of precedent for the extent of discovery Plaintiffs seek in their non-class action

claim, Plaintiffs again seek court intervention with an unfounded motion to compel.[1] This time,

their demands include the production of documents regarding:

---

[1] Following filing of Plaintiffs' Motion, the City responded to the second of the three requests that are the subject of the motion: "complaints regarding sex discrimination related to the instructors from the 2014-

(1) Complaints regarding sex discrimination (including sexual harassment) in the paramedic academy since 2011; and

(2) Complaints regarding aggression, violence, or threats of violence directed at any woman in the CFD firefighter or paramedic training academy from 2008 to the present. This request encompasses but is not limited to all documents and ESI regarding incidents involving Juan Lopez and Robert Leventopoulos. The production should include all documents concerning employment actions taken in response to the reports of improper conduct.

(Collectively, the "Documents"). DKT 287, p. 6.

Plaintiffs' request for the Documents disregards what has become scripture in this case: this case is about post-hire physical tests Plaintiffs failed in 2014 and 2015. Though the Court has allowed some pattern-or-practice and *Monell* discovery, it has appropriately limited the scope of such discovery to Plaintiffs' theory that CFD has an alleged custom or practice of discrimination regarding (post-hire) physical tests—not that it commits discrimination in all aspects of the City's hiring process and CFD's training academies.

The Documents are irrelevant because they have no relation to physical tests, and are based on ancillary allegations in the First Amended Complaint ("FAC") and allegations (not findings) in other lawsuits. The Documents would only show whether, over a twelve-year period, there have been sex discrimination and sexual harassment complaints at CFD, a department of over 5,000 members. The Documents would not support Plaintiffs' claims, and if admitted at trial, would result in time-consuming, sideshow mini-trials to determine the merits of the individual complaints, to the extent that would even be possible given the staleness of allegations that might be as many as ten years old. Plaintiffs also ask this Court to transform their lawsuit into an assault and battery case, demanding every single complaint of violence or threats of violence in the

2015 paramedic academies, since 2008." DKT 287, p. 6. Consequently, the Court is now asked to resolve the parties' disputes regarding only two document requests.

paramedic *and* firefighter academies over twelve years—when there is not a *single* mention of aggression, violence, or a threat of violence in the FAC.

For the reasons that follow, the motion to compel the Documents should be denied.

## II. ARGUMENT

### A. The Documents are Irrelevant to Plaintiffs' Claims

#### 1. The Documents are Overbroad Based on Prior Discovery Orders

A finding that the scope of the Documents is overbroad would be consistent with other discovery orders in this case, which have held that requests for years of documents regarding other CFD applicants or employees unrelated to post-hire physical tests are irrelevant and overbroad. *See* DKT 174 (data/results of PPAT since 2012 irrelevant and overbroad; documents regarding validation, review, and analysis of applicant or candidate testing from 2003 to present irrelevant and overbroad); DKT 255 (demographic data on CFD applicants from 1995 to present irrelevant).

Plaintiffs characterize the City's discovery positions in this case as "stubborn," (DKT 287, p. 6) but ironically, the one constant in this litigation has been Plaintiffs' complete disregard of discovery orders by the Court. Plaintiffs have been cautioned about their unbridled discovery positions—but they persist. *See* DKT 257 (in overruling Plaintiffs' objections to Magistrate Judge's order, explaining that discovery is not a "freestanding right"). The U.S. Supreme Court has cautioned that "the requirement of Rule 26 that the material sought in discovery be 'relevant' should be firmly applied, and that 'judges should not hesitate to exercise appropriate control over the discovery process.'" *Sapia v. Bd. of Educ. of City of Chicago*, 328 F.R.D. 506, 509 (N.D. Ill. 2019) *citing Herbert v. Lando*, 441 U.S. 153 (1979). The Court has appropriately controlled the discovery process in this case and should rule on the instant motion consistent with those rulings. Thus, Plaintiffs' motion should be denied based on the prior discovery orders in this case.

## 2. The Documents are Irrelevant to the Allegations in the FAC

Plaintiffs cite ancillary allegations from the FAC, allegations from other lawsuits, and non-binding, out of context testimony from the *Doe* lawsuit to argue that other individuals' complaints regarding sex discrimination and violence (the "Other Acts") are relevant to their claims. But a review of Plaintiffs' actual allegations significantly diminishes their argument. The FAC has eighty-three paragraphs, including sub-parts. Only three of those paragraphs allege facts even remotely close to the Other Acts. Paragraph 6(d) alleges harassment and intimidation towards female paramedics (other than Plaintiffs) and firefighters without appropriate corrective action by the City. FAC, ¶ 6(d). There is no mention of time period, discriminatory animus, perpetrators (as written, the perpetrators could have been other females), whether the alleged harassment or intimidation was reported in accordance with CFD policy or whether the City otherwise had knowledge of these allegations. *Id*. Paragraph 52(f)(i) alleges an incident in which a female firefighter candidate (a plaintiff in the *Godfrey* lawsuit) alleged someone smeared feces on her uniform inside a female locker room, but does not mention discriminatory animus or attempt to identify the perpetrator (as written, the perpetrator could have been a woman who shared the female locker room). *Id*., ¶ 52(f)(i). Paragraph 52(f)(ii) describes alleged acts involving CFD Academy instructors that actually relate to Plaintiffs, but the City has fully responded to the document requests related to this paragraph. *Id*. at 52(f)(ii). Though Paragraph 6 alleges unequal facility access for females and lack of accommodations for nursing mothers, Plaintiffs do not allege they were victims of such practices, and Paragraph 6 is based only on allegations (and not findings) in *Godfrey* and *Doe. Id*., ¶ 6(b)-(c); DKT 287, pp. 3-4. Finally, Plaintiffs cite paragraphs 61 and 62 of the FAC to show relevance, but those paragraphs are bereft of allegations regarding Other Acts.

Knowing their FAC lacks allegations regarding Other Acts, Plaintiffs reach outside the FAC to the *Ernst* and *Doe* cases to argue relevance in *this* case. The *Ernst* reference fails because that case challenged the City's *pre-hire* process and did not result in any finding that the City intentionally discriminated against women; the Other Acts documents Plaintiffs now seek relate to intentional discrimination. The reference to *Doe* is also confounding. Plaintiffs argue the denial of a summary judgment motion in *Doe* supports their motion, but the mere fact that the *Doe* Court determined there are triable issues of fact does not warrant an extension of discovery in this case.

Plaintiffs also attach to their Motion a deposition excerpt from *Doe*. DKT 287-1. First, the testimony is incomprehensible without further context and Plaintiffs fail to provide relevant background to make a logical connection with the instant lawsuit; the excerpt should be disregarded for this reason alone. Second, the deponent is a CFD paramedic field chief, which position is outside the control group of CFD decision-makers, and the testimony is thus not binding on CFD. Third, contrary to the testimony, neither Adrianne Bryant (CFD's Deputy Commissioner, Bureau of Administrative Services), nor the Chicago Fire Department's Internal Affairs Division, nor the CFD Commissioner are charged with investigating sexual harassment complaints pursuant to CFD procedure; therefore, the application of the testimony, at least to this case, is questionable. The Court should accordingly disregard this poor attempt to rely on *Doe* in order to establish the relevance of the Documents in the instant case.

Moreover, Plaintiffs' FAC and the entire thrust of their claims focus only on the post-hire physical tests they took in the 2014 and 2015 paramedic academy, which contrasts with the lack of allegations regarding the Other Acts in the FAC. FAC, ¶ 2 ("The principal focus of this complaint is the City's discriminatory use of physical testing of candidate Fire Paramedics...."); *Id*. at ¶ 5 ("The focus of this case is the replacement physical testing requirements...."); *Id*. at ¶ 27

5

("These new [physical testing] requirements, which are the focus of this complaint....") (alteration added); Judge Ellis' Jan. 7, 2020 order, DKT 257, p. 1 ("Plaintiffs' claims focus primarily on the City's administration of the 'Lifting and Moving Sequence' and the 'Step Test' (the 'Subject Tests')...."); Judge Kim's July 24, 2019 Order, DKT 174, p. 2 ("The claims in this case pertain to the Subject Tests Plaintiffs had to pass....").

In sum, the Documents are irrelevant to the actual claims Plaintiffs bring and the facts needed to establish such claims. As such, their motion to compel should be denied.

### 3. The Decisions Plaintiffs Cite are Distinguishable

None of the decisions cited by Plaintiffs support their request for the Documents, which requests include twelve years' of complaints of sex discrimination or violence in the paramedic and fire academies. The Other Acts evidence compelled in the cases Plaintiffs cite: (1) was specifically narrowed to the same type of discrimination that was the focus of those lawsuits; (2) related to the same actors; and (3) was properly narrowed to a specific time frame. *E.E.O.C. v. SVT, LLC*, 2014 WL 7148790, at \*6 (N.D. Ind. Dec. 15, 2014) (lawsuit focused on one act of intentional discrimination against plaintiff committed by a manager at one store; plaintiff entitled to evidence for other managers at the same store, for time period starting one year prior to act against plaintiff); *Woods v. Von Maur, Inc.*, 2010 WL 3420187, at \*4 (N.D. Ill. Aug. 27, 2010) (lawsuit focused on intentional race discrimination against plaintiff by one manager; plaintiff entitled to evidence of other race discrimination complaints in same region as one manager); *Davis v. Precoat Metals, a Div. of Sequa Corp.*, 2002 WL 1759828, at \*3 (N.D. Ill. July 29, 2002) (lawsuit focused on intentional race discrimination against plaintiffs; plaintiffs entitled to other race discrimination complaints over a four-year period during which a subset of the plaintiffs were actually employed (*see Complaint, DAVIS, L.C. et al. v. Precoat METALS*, 2002 WL 32510568 (N.D.Ill.)).

Conversely, here, the FAC focuses on post-hire physical tests, not intentional sex discrimination, sexual harassment, or violence. Plaintiffs seek documents not just regarding complaints against the twenty-five instructors in the paramedic academy during 2014-15 (which request, critically, the City has responded to), but also those regarding complaints that might have been made by literally every single person, including men,[2] visitors, and third-party vendors not employed by CFD, who stepped foot in the paramedic or fire academies in the last twelve years. Plaintiffs' arguments regarding the appropriate time period for discovery in this case are similarly unavailing because the plaintiffs in the cases they cite were employed for the entire duration of the period for which they sought discovery. In *Vega v. Chicago Park Dist.*, the plaintiff was employed by the defendant from 1987 until her termination in 2012, and she was a supervisor from 2004 to 2012. 954 F.3d 996, 1005 (7th Cir. 2020). She introduced data regarding termination of Caucasian versus Hispanic supervisors from 2005 to 2012, which overlapped with her tenure as supervisor. *Id*. Further, the *Vega* court did not rule on, or even address, whether that discovery period was appropriate in the first place. *See generally id*. In *Gripper v. City of Springfield, Illinois*, the plaintiff was employed from 1995 until her 2003 layoff, the exact same time period for which she was permitted to take comparator discovery. 2005 WL 8164695, at *1, 4 (C.D. Ill. June 23, 2005).

In stark contrast to those cases, here, each Plaintiff alleges she was employed by the City for only a brief period in either 2014 and/or 2015, and like the plaintiffs in the cases they cite, Plaintiffs are only entitled to Other Acts evidence for the years of their employment.[3] None of the Plaintiffs allege they worked for CFD before 2014. None allege that they were victims of CFD's

---

[2] Plaintiffs' requests demand documents regarding *all* sex discrimination—including sex discrimination alleged by males.

[3] Of course, some of the Plaintiffs, including Griffin, were subsequently rehired by the City.

practices prior to 2014. And all of their alleged injuries occurred only during 2014 and 2015.[4]

There simply is no basis to expand discovery to cover a twelve-year period and Plaintiffs provide

none.

4. <u>Plaintiffs Fail the Other Acts Relevance Test</u>

Plaintiffs argue that the Other Acts or "me too" evidence they seek has "clear relevance"

to their claims. DKT 287, p. 6. However, the U.S. Supreme Court has held that such evidence is

never *per se* relevant and requires a multi-factor relevancy test. *Sprint/United Mgmt. Co. v.*

*Mendelsohn*, 552 U.S. 379, 388 (2008). The Court in *Sprint* recognized at least one factor: how

closely related the evidence sought is to plaintiff's circumstances and theory of the case. *Id.* This

factor applies heavily in the City's favor. The only Other Acts evidence arguably close to

Plaintiffs' circumstances would be related to other recent complaints regarding post-hire physical

testing (to the extent they exist) or complaints made by non-parties against Plaintiffs' supervisors.

The City has responded to that request—and then some—by responding to *any* sex discrimination

complaints against all twenty-five academy instructors (the operative supervisors in this case) in

the 2014 and 2015 academy, since 2008 to the present. The remaining documents at issue, which

could include sex discrimination complaints by, for example, men in 2011, or complaints of

violence by paramedic applicants in 2008, are utterly unrelated to Plaintiffs' circumstances.

Other courts have used additional factors to determine relevancy of Other Acts evidence,

including:

> (1) whether the evidence is logically or reasonably tied to the decision made with
> respect to the plaintiff; (2) whether the same "bad actors" were involved in the
> "other" conduct and in the challenged conduct; (3) whether the other acts and the

---

[4] Except Griffin who was discharged in 2016 following a prolonged leave period. However, Griffin's discharge in 2016, by itself, does not suffice to expand discovery beyond 2015 because she did not re-enter the academy after 2015 and therefore had no connection with any alleged discrimination or violence in the academy after 2015.

challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations.

*Schrack v. RNL Carriers, Inc.*, 565 F. App'x 441, 445 (6th Cir. 2014). The court in *Schrack* affirmed the district court's ruling that the defendant-employer's human resources representative's testimony regarding Other Acts was irrelevant to plaintiff's disability discrimination claim based on these factors. *Id*. The court held that the testimony was too vague as to make a logical connection to plaintiff's allegations; the plaintiff and the witness identified different bad actors; the plaintiff did not show that the employer's decision-makers were involved with the alleged bad acts; and testimony regarding other employees' fear of retaliation due to their disabilities was too vague and conclusory to show they were similarly situated to the plaintiff. *Id*. Though the alleged Other Acts happened at the same time and place as plaintiff's discharge, that factor was not enough to show relevance. *Id*.; *see also Hosse v. Sumner Cty. Bd. of Educ.*, 776 F. App'x 902, 905 (6th Cir. 2019) (Other Acts evidence not relevant where comparators had different jobs, two year gap separated alleged discriminatory acts, and plaintiff and comparators had different supervisors).

The *Schrack* factors militate against finding the Documents bear any relevance to Plaintiffs' claims. First, random complaints of sex discrimination and violence over twelve years do not logically or reasonably tie to decisions about the post-hire physical tests Plaintiffs failed. Second, Plaintiffs have no basis to allege that two instructors who allegedly harassed them were named in other sex discrimination complaints they seek. Third, they offer nothing concrete to suggest that decision-makers at CFD knew about all sex discrimination and violence complaints, even if no one filed a complaint (and despite the deposition excerpt from *Doe*, neither Adrianne Bryant nor the CFD Commissioner receive sexual harassment complaints on behalf of CFD). Fourth, Plaintiffs do not seek complaints of similarly situated employees since they demand *all*

sex discrimination complaints in the paramedic academy (including potentially those made by visitors, men, and paramedic applicants), and *all* such complaints in the fire academy (implicating different jobs). Like the *Schrack* case, the only factor in Plaintiffs' favor is geographic proximity. *Id*. But unlike *Schrack*, the other part of that factor, temporal proximity, disfavors Plaintiffs given the demand for twelve years' worth of documents. *See id*. Therefore, the Other Acts evidence Plaintiffs seek is irrelevant to their claims.

5. The Documents Plaintiffs Seek are Irrelevant to their *Monell* Claims

Courts have prohibited discovery for *Monell* claims where the information sought is disconnected from the alleged individual bad actors. *See, e.g., Bonner v. O'Toole*, No. 12 C 981, 2012 WL 6591720, at \*2 (N.D. Ill. Dec. 18, 2012) (in *Monell* case regarding invalid search warrant, denying motion to compel all documents regarding warrants where defendant-officer involved, and limiting discovery only to warrants where officer was affiant). Here, the City has already responded to requests for twelve years' of complaints against twenty-five academy instructors, even though the FAC only alleges improper actions by three of them. FAC, ¶ 52(f)(ii). The remaining complaints Plaintiffs now demand are far removed from the alleged bad actors referenced in the FAC, and are therefore irrelevant.

Moreover, "*Monell* claims must be limited to policies and practices that are the *moving force* behind the specific constitutional violations allegedly inflicted on a plaintiff." *Wright v. City of Chicago*, 2010 WL 4875580, at \*3 (N.D. Ill. Nov. 23, 2010) (emphasis in original) *citing Thomas v. Cook County Sheriff's Dept*., 604 F.3d 293, 306 (7th Cir. 2010). As discussed in § II.A.2, *supra*, both the Plaintiffs and this Court have recognized that the post-hire tests which Plaintiffs took and failed are the focus of the FAC. Thus, policies, procedures, and practices regarding those post-hire tests are the *moving force* behind the constitutional violations allegedly inflicted on

Plaintiffs. Conversely, policies, procedures, and practices related to episodic acts of sex discrimination are *not* the moving force behind Plaintiffs' claims.

In applying the "moving force" test, the court in *Wright* ruled that plaintiff's request for a wide array of documents regarding general wrongdoing was not connected to the allegations of the complaint, which implicated specific policies, procedures, and practices of the defendant-municipality. 2010 WL 4875580, at *3. Similarly, here, the Documents merely concern general allegations of wrongdoing by CFD which in any way relate to sex discrimination. The Court has repeatedly rejected this approach, including when it denied Plaintiffs' prior attempt to combine this lawsuit with others lawsuits, such as *Ernst*. *See* DKT 187 ("Plaintiffs fail to persuade this court that the two cases are so similar that all discovery from *Ernst* should be permissible for use in this case."); *see also* DKT 257 (overruling Plaintiffs' objections to ruling on relevance of *Ernst* to the instant litigation). Thus, the Documents Plaintiffs demand are irrelevant to their *Monell* claims, and Plaintiffs' motion to compel should be denied accordingly.

6.      Harassment Complaints are Especially Irrelevant to Plaintiffs' Claims

Further, to the extent Plaintiffs seek evidence of a pattern, practice, policy or custom of hostility/harassment, evidence of other employees' complaints is relevant in only narrow circumstances. *Wellington v. Lake Health Sys., Inc.*, 2020 WL 1031537, at *1 (N.D. Ohio Mar. 3, 2020) ("defendant's harassment against other individuals of which a plaintiff is unaware is irrelevant to a hostile work environment claim"); *Schindler v. Larry's IGA, Inc.*, 1994 WL 324563, at *4 (D. Kan. June 16, 1994) (though harassment of other employees may in certain circumstances be considered, plaintiffs must be subject to same type of hostility); *see also Jones v. Commander, Kansas Army Ammunitions Plant, Dep't of Army*, 147 F.R.D. 248, 251 (D.Kan.1993) (incidents of sexual harassment directed at other employees not relevant when "too remote in time or too attenuated from [the] plaintiff's situation.").

11

Here, Plaintiffs seek harassment complaints of which they have no personal knowledge and were not victim to, which would likely vary widely in circumstance, and/or which are too remote in time and substance from their employment in 2014/2015. The FAC alleges only that two Plaintiffs were harassed on discrete occasions: once when an unnamed instructor peered down Plaintiff Snevely's shorts and another occasion when an instructor allegedly remarked on Plaintiff Markey's physique. FAC, ¶ 52(f)(ii). As an initial matter, these allegations fail to state a claim for sexual harassment or hostile work environment under Title VII. Further, these allegations are limited to just two of the Plaintiffs, involving two instructors, on two occasions. Plaintiffs do not contend that they are aware of similar types of alleged harassment directed by anyone else at any time. Nevertheless, Plaintiffs seek ten years' worth of discovery regarding any complaint of sexual harassment of any type made by persons known or unknown, including those that on their face would be far afield from the types of alleged conduct about which Snevely and Markey complain, such as improper sexual advances or quid pro quo harassment. Plaintiffs cite no cases that would support such far flung discovery, and, as noted above, courts regularly deny similar requests. Therefore, evidence of all harassment complaints at the paramedic academy since 2011 is irrelevant to Plaintiffs' claims.

7. Discovery Regarding Allegations of "Violence" is Clearly Irrelevant

Finally, Plaintiffs seek complaints regarding allegations of aggression, violence, or threats of violence against women that may have been made at CFD since 2008. Plaintiffs suggest that the City objects to these requests merely because Plaintiffs do not allege that they were victims of aggression, violence, or threats of violence. DKT 287, p. 10. While that alone, and the fact that Plaintiffs do not allege that they ever *complained* about violence, is sufficient to deny their request, the irrelevance of the request runs much deeper. Nowhere in Plaintiffs' entire FAC is there any mention of alleged aggression, violence, or threats of violence, *against anyone, at any time,*

12

including but not limited to the two years during which Plaintiffs were employed by the City. *See generally*, FAC. Plaintiffs cite but one decision for the proposition that Other Acts in *Monell* cases need not be identical to a plaintiff's case. *Awalt v. Marketti,* 2015 WL 4338048 (N.D. Ill. July 15, 2015). In *Awalt*, however, the plaintiffs all complained about the same thing—the defendants' alleged failure to provide adequate medical care, and the Court merely noted that the comparators need not have identical medical issues, and "[i]n fact, it would be surprising if they did." *Id.* at *16. Plaintiffs here, in stark contrast, allege nothing even remotely like violence. Consequently, their reliance on *Awalt* is unavailing. Additionally, for the reasons stated in Section II.A.5, *supra*, courts have denied *Monell* discovery when the discovery sought is too far afield from the *Monell* allegations, let alone allegations that Plaintiffs do not even assert, i.e., regarding violence.

Moreover, in a case on point, a federal court recently rejected the position Plaintiffs here are advancing. In *Szany v. Garcia*, the plaintiff demanded discovery for evidence of violent acts allegedly committed by her co-workers as part of her Title VII hostile work environment claim. *Szany v. Garcia*, 2019 WL 1035798, at *2 (N.D. Ind. Mar. 5, 2019). The Court noted that evidence of violence did not further the harassment claims because violent acts are distinct from harassing acts, and in denying plaintiff's motion to compel discovery, ruled that evidence of violence was not relevant to any of the elements for a sexual harassment claim. *Id*. Plaintiffs' effort should be similarly rebuked.

### B. The Documents are Disproportionate to the Needs of this Case

The Documents are significantly disproportionate to the needs of this case, as they relate to only three of the eighty-three paragraphs in the FAC. Further, Plaintiffs grossly underestimate the burden on the City to locate any responsive documents that might exist. (*see* DKT 287, p. 12). The effort would require, at a minimum, the following:

- Reviewing each complaint of discrimination made in the paramedic academy from 2011 to 2020 and isolating any sex discrimination complaints (in 2014 and 2015 *alone*, there were 200 members in the academy).

- Reviewing each complaint made in the paramedic academy from 2008 to 2020 which could be construed as relating to aggression, violence, or threatened violence, and isolating those that are responsive.

- Reviewing each complaint made in the firefighter academy from 2008 to 2020 which could be construed as relating to aggression, violence, or threatened violence, and isolating those that are responsive.

- Reviewing all human resources files, the City's Diversity and Equal Employment Opportunity ("EEO") Division[5] files, potentially the Office of the Inspector General files (which may also have received such complaints), and related files "concerning employment actions taken in response to the reports of improper conduct" for each complaint of violence or threatened violence over the 12-year period. DKT 287, p. 6.

Combing through these complaints and investigations would require an enormous amount of time, effort, and resources. It would further require thousands of dollars in attorney responsiveness review, privilege review, and redactions. Indeed, the effort would be akin to the time and resources required for similar discovery arising from complex class actions spanning the claims of hundreds of plaintiffs arising from decades of employment. But here, the twelve Plaintiffs' claims are limited to alleged sex discrimination resulting from their separations over a two-year span. *See Jakob v. Champion Int'l Corp*., 2001 WL 1442514, at \*2 (N.D. Ill. Nov. 15, 2001) (denying motion to compel Other Acts evidence since the case was not a class action). As such, their motion to compel should be seen for what it is: an improper fishing expedition designed not just to drive up the City's litigation costs, but also to unearth what they hope might be information by which they can taint the jury at trial with allegations of—if not evidence or proof

---

[5] The EEO Division is a division of the City's Department of Human Resources which enforces the City's prohibition of unlawful discrimination within its departments. The EEO Division handles discrimination complaints by City employees, including CFD employees.

of—acts of an entirely different nature committed by different actors against different individuals at different times than when Plaintiffs were employed. Such gamesmanship should not be condoned. *See Sapia v. Bd. of Educ. of the City of Chicago*, 2017 WL 2060344, at *2 (N.D. Ill. May 15, 2017) ("discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest.").

In fact, the City has already conducted significant document review to respond to Plaintiffs' request for "complaints regarding sex discrimination related to the instructors from the 2014-2015 paramedic academies, since 2008." There were a total twenty-five instructors in the 2014-2015 classes. Each of their files had to be reviewed for any complaints regarding sex discrimination over a twelve-year period. Only complaints regarding instructors are arguably properly tailored to Plaintiffs' claims because Plaintiffs actually interacted with some of those instructors during the academy, and harassment complaints against other CFD personnel during academy training would arise only in extraordinary circumstances. Further, the City has conferred in good faith by responding to requests for instructor-related complaints regarding many years before and after 2014/2015 when Plaintiffs were in the academy. Discovery of complaints beyond that could encompass complaints, for example, by newly hired paramedics or paramedic candidates against one another, which the City could have swiftly addressed as to negate any discriminatory animus attributable to the City. After nearly four years of discovery, the Plaintiffs have what they are reasonably entitled to. What they now demand is severely disproportionate to the needs of their case. *See Sapia*, 328 F.R.D. at 509 ("Plaintiffs have enjoyed about four years of discovery in this case. That's more than enough to satisfy any legitimate interests."). Plaintiffs' motion should be denied.

WHEREFORE, the City respectfully requests that the Court deny Plaintiffs' Motion to Compel Production of Documents Regarding Other Acts of Sex Discrimination in the Academy.

Dated:  June 19, 2020

Respectfully submitted,

MARK A. FLESSNER
Corporation Counsel of the
**CITY OF CHICAGO**

By:   s/Sukrat A. Baber
Special Assistant Corporation Counsel

Allan T. Slagel (ARDC No. 6198470)
aslagel@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
Sukrat A. Baber (ARDC No. 6319022)
sbaber@taftlaw.com
Special Assistant Corporation Counsel
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
(312) 527-4000

27252863.11