## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER LIVINGSTON, *et al.*, | ) | |
| | ) | No. 16 CV 10156 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | March 24, 2021 |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

Before the court is Plaintiffs' motion for protective order seeking an order barring Defendant City of Chicago ("the City") from eliciting deposition testimony from them regarding court-supervised settlement discussions. For the following reasons, the motion is granted in part and denied in part:

### Background

Plaintiffs filed this employment discrimination lawsuit in 2016 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, claiming that the Chicago Fire Department's ("CFD") physical testing requirements for its paramedic candidates has a discriminatory impact on female candidates. In January 2017 this case was referred to this court for purposes of presiding over settlement discussions, kicking off what would become a year's-long process of negotiations among the parties. Although this court terminated the initial settlement referral in June 2018, the case was referred to this court again in March 2019, and that referral lasted for another two months. During the first two referral periods, the parties exchanged

multiple settlement position statements and the court held more than 30 settlement discussions, taking place either in person or by phone.

In June 2017, March 2018, and April 2019, the City offered to rehire Plaintiffs as CFD paramedics candidates. (All three offers were made within the settlement referral periods.) Plaintiffs Jessica Maples and Kenia Chavez accepted the June 2017 offer, Plaintiff Lisette Venegas accepted the March 2018 offer, and Plaintiff Jennifer Livingston accepted the April 2019 offer. (R. 350, Def.'s Resp. at 2-3.) On January 21, 2021, the City deposed Venegas and asked her questions about her decision to reject the City's first offer and to accept the second. Venegas refused to answer "anything related to those settlement discussions." (Id. Ex. 1, Venegas Dep. Tr. 362-63.) Plaintiffs then filed the current motion.

## Analysis

In moving for a protective order, Plaintiffs argue that the City should be barred from questioning them about the settlement discussions and attorney communications related to the City's offers to rehire them because Local Rule 83.5 and this court's standing order make clear that statements made in settlement negotiations are confidential. They argue that having relied on the court's standing order and assurances of confidentiality during the settlement process, Plaintiffs should not be forced to answer questions that would require them to reveal the substance of their settlement communications, including how they evaluated the City's offers for reinstatement. In response, the City asserts that its offers to reinstate Plaintiffs were unconditional and did not involve the compromise of any

2

claim, and accordingly, the cited local rule and standing order do not bar the discovery it now seeks. The City argues that it should be allowed to depose Plaintiffs with respect to the following five lines of questioning:

1. Whether Plaintiffs were aware of each hiring opportunity in June 2017, March 2018, and April 2019;

2. Whether Plaintiffs understood that, by accepting the hiring opportunity, they would not be required to settle, release, or compromise their claims, or dismiss the claims they asserted in this action;

3. Whether they understood that as part of the hiring opportunity: (1) neither the "lift and move" test nor the "box test or exercise" would be used in the Academy; (2) they would not be required to lift a mannequin weighing more than 150 pounds; (3) if they received an adverse medical determination, they would be afforded an independent medical examination; and (4) certain CFD members would not be involved in their Academy training;

4. Whether any circumstances related to the Plaintiff's physical or mental status, or personal life, would have prevented her from working for CFD as a paramedic at the time each offer was made; and

5. Why the Plaintiff declined one or more of the hiring opportunities.

(R. 350, Def.'s Resp. at 3-4.)

The court may issue a protective order preventing discovery into certain matters "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and where the moving party shows "good cause." Fed. R. Civ. P. 26(c)(1)(D); *Pfizer, Inc. v. Apotex, Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010). Plaintiffs argue that good cause for barring the City's proposed lines of questioning stems from Local Rule 83.5 and this court's standing order on

settlement conferences. Local Rule 83.5 makes clear that "any act or statement made by any party, attorney, or other participant" in a settlement conference "shall, in all respects, be privileged and not reported." Under the relevant standing order, "[s]tatements made by any party during the settlement conference are not to be used in discovery and will not be admissible at trial." (Available on this court's webpage at https://www.ilnd.uscourts.gov.) The goal behind the local rule and standing order is to promote the efficient alternative resolution of cases by allowing parties to engage in candid settlement discussions, secure in the knowledge that their statements, proposed compromises, and discussions with the court will be shielded from being made public or being used against them. *Cf.* 28 U.S.C. § 652(d) (directing district courts to issue rules ensuring the confidentiality of alternative dispute resolution processes and prohibiting the disclosure of settlement communications); *MicroMetl Corp. v. Tranzact Techs., Inc.*, No. 08 CV 03257, 2010 WL 4623797, at *3 (N.D. Ill. Nov. 5, 2010) (acknowledging the "strong policy prohibition against revealing confidential settlement offers"); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 368 (N.D. Ill. 2001) ("Allowing discovery of negotiations between parties to an ongoing litigation can have a chilling effect on the parties' willingness to enter into settlement negotiations.").

In arguing that the rules making settlement negotiations confidential should not apply to the proposed deposition questions, the City asserts that because it did not directly tie its offers to reinstate Plaintiffs to any compromise of their claims, the offers fall outside of the parties' settlement negotiations. It also asserts that

"true unconditional offers" of reinstatement fall outside of Federal Rule of Evidence 408(a), which limits the admissibility of settlement discussions or offers to prove or disprove the validity or amount of a claim. (R. 350, Def.'s Resp. at 5-6.) After reviewing the offer term sheets the City submitted in support of its position, the court is unpersuaded. Although it is true that the City's offers did not require Plaintiffs to give up their claims in exchange for accepting the rehire offers, the term sheets include language making it clear that each of the offers was a byproduct of and directly tied to the parties' on-going settlement discussions. (See, e.g., R. 357-1 at 2, 5-6, 8, 14, 17-18, 20, 23, 25, 28, 40.) In fact, several of the documents state that the offers were made "[i]n an effort to move the [settlement] process forward." (Id. at 14, 20, 25.) That language undermines the City's attempt to present the offers as being separate and apart from the settlement process.

Turning to the specific lines of questioning the City proposes to explore, Plaintiffs have shown good cause for a protective order barring Nos. 1 through 3 above, because the proposed lines of questioning inevitably would probe Plaintiffs' privileged communications with their attorneys on the subject matter of settlement negotiations. Moreover, the City has no real need to depose Plaintiffs as to whether they were aware of and understood the terms of the offers for reinstatement. Plaintiffs were represented by attorneys in the talks leading up to, during, and after the offers for reinstatement were made. Attorneys are bound by an ethical obligation to "promptly inform" their clients "of any decision or circumstance with respect to which the client's informed consent . . . is required[.]" ABA Model Rule

1.4(a)(1).[1]  The comments to Model Rule 1.4 make clear that this duty extends to settlement offers: "a lawyer who receives from opposing counsel an offer of settlement in a civil controversy . . .must promptly inform the client of its substance[.]"  ABA Model Rule 1.4, comment 2.  Because the City does not suggest or point to evidence supporting a conclusion that Plaintiffs' attorneys failed to meet their ethical obligations, the City may presume that Plaintiffs were aware of and fully understood the terms and consequences of the relevant offers.

As for No. 4, the City should be able to ask Plaintiffs who rejected the reinstatement offers whether any circumstances related to their physical health, mental status, or personal life would have prevented them from working for CFD as a paramedic at the time each offer was made in June 2017, March 2018, and April 2019, without delving into the realm of settlement talks.  These are questions which Plaintiffs could answer as factual matters without describing any discussions with their attorneys or getting into the back-and-forth that may have gone into the crafting or rejection of the reinstatement offers.  And the City is correct that it is entitled to discover this evidence to support its defense to Plaintiffs' claims for lost wages, because "an employer charged with unlawful discrimination often can toll the accrual of backpay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages."  *Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219, 232 (1982).  In other words, plaintiffs in

---

[1] Under Local Rule 83.50, the ABA's model disciplinary rules apply to attorneys practicing before this court.

a Title VII case have a duty to mitigate their damages by accepting an offer of reinstatement or other offers for suitable employment.[2] *Id.* at 231.

The City argues that in order to determine whether their rejection of the offers was reasonable, it needs to question Plaintiffs who rejected its offers of reinstatement as to whether there was a personal, mental health, or physical barrier to their acceptance. That is because the accrual of damages for a discriminatory employment action only terminates where the plaintiff unreasonably rejects an offer of reinstatement, *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1203 (7th Cir. 1989), and these questions could illuminate the inquiry as to whether Plaintiffs' rejections were reasonable. Because the court concludes that the City can depose Plaintiffs with respect to No. 4 without breaching the barrier protecting the confidentiality of settlement discussions, and because the answers to those questions will inform its damages defense with respect to Plaintiffs' duty to mitigate, Plaintiffs have not shown good cause to prevent the City from exploring this line of questioning.

Turning to No. 5, the court agrees with Plaintiffs that asking them to provide all their reasons for rejecting the City's reinstatement offers would necessarily invade the attorney-client privilege and the confidentiality of the settlement negotiations. Plaintiffs would be unable to respond to this question without revealing their discussions with their attorneys and the court with respect to the

---

[2] Damages claims for front and back pay are matters of equity under Title VII, and whether they should be awarded is for the court to decide. *Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500-01 (7th Cir. 2000).

advantages or disadvantages of accepting each offer.  How Plaintiffs weighed the offers, what factors informed their decisions, and the ultimate reason why they rejected the offer all implicate confidential settlement discussions and attorney communications, and accordingly, there is good cause to prohibit the City from deposing Plaintiffs on this point.

Finally, the City argues that Plaintiffs waived any argument that the negotiated terms of hiring opportunities are confidential by seeking discovery regarding the City's post-2016 changes to its hiring practices, including why it stopped using the subject tests for CFD paramedics candidates, and based on a related lawsuit stemming from a finding that the plaintiff was not medically qualified for rehire.  Waiver is defined as "the intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Housing Servs. of Chi.*, 897 F.3d 835, 840 (7th Cir. 2018) (citation omitted).  None of the actions the City highlights suggests such a relinquishment on Plaintiffs' part with respect to their assertion of confidentiality with respect to settlement negotiations and communications in this case.  The City has not shown that Plaintiffs previously took the position that court-ordered settlement discussions are discoverable, and accordingly, the court declines to find that they have waived this argument for purposes of the current motion.

## Conclusion

For the foregoing reasons, the motion for protective order is granted in part and denied in part. The motion is granted to the extent that the City is barred from asking Plaintiffs about Nos. 1-3, and 5, described herein, but denied as to No. 4.

**ENTER:**

_Young B. Li_

**Young B. Kim**
**United States Magistrate Judge**