# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER LIVINGSTON,** *et al.*, | ) | |
| | ) | **No. 16 CV 10156** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | **May 26, 2021** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION and ORDER

Before the court is Plaintiffs' motion to resolve privilege disputes relating to certain documents Defendant City of Chicago ("the City") produced in discovery and is now attempting to claw back. For the following reasons, the motion is granted in Plaintiffs' favor:

### Background

Plaintiffs filed this employment discrimination lawsuit in 2016 under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, claiming that the Chicago Fire Department's ("CFD") physical testing requirements for its paramedic candidates had a discriminatory impact on female candidates. In September 2020 the City produced more than 80,000 pages of documents to Plaintiffs, including 6 documents the City now asserts that it inadvertently disclosed. (R. 418, Def.'s Resp. at 1-2.) Plaintiffs describe the 6 disputed documents as attachments to 2 emails CFD Medical Director Dr. William Wong sent to his own work account and his personal Yahoo

account. (R. 393, Pls.' Mot. at 1.) Plaintiffs refer to these 2 emails as "Exhibit 7" and "Exhibit 41." (Id. at 2 & n.2.)

Exhibit 7 is a May 16, 2014 email Dr. Wong sent to his work and personal email accounts ("Exhibit 7a"), (id. Ex. A at 2), attaching in relevant part the following documents: (1) "CFD Medical Division SOP – DRAFT – 4-10-14.doc," which includes the draft Standard Operating Procedures ("SOPs") for the Medical Division ("Exhibit 7b"), (id. Ex. A at 3-36); and (2) "SOPs – Fabrice Edits – 4 3 14.doc," which includes notes relating to the SOPs from Dr. Wong's predecessor, Dr. Fabrice Czarnecki ("Exhibit 7d),[1] (id. Ex. A at 38-53). (R. 418, Def.'s Resp. at 1; see also R. 393, Pls.' Mot. at 2.) Exhibit 7a does not include any text in the body of the email, and the City does not assert that it is privileged. However, Plaintiffs contend that the attachments which the City now claims it inadvertently disclosed—Exhibits 7b and 7d—are not subject to any privilege. (Id. at 3, 10.)

As to Exhibit 7b, Plaintiffs allege that Dr. Wong prepared the draft to clarify the SOPs of the Medical Division. (Id. at 5.) The City contends that Dr. Wong emailed a "working copy" of the draft to the City's attorneys for their review on June 20, 2014. (R. 418, Def.'s Resp. at 4-5 & Ex. 4.) According to the City, Dr. Wong, other unnamed CFD "privilege group employees," and Dr. Czarnecki contributed to "the first complete draft" of the SOPs. (Id. at 4-5.) The draft SOPs continued to be updated until July 2015 when the City says it decided not to finalize or adopt the SOPs based on advice from its attorneys. (Id.) The City asserts that Exhibit 7b reveals legal

---

[1] Exhibit 7c is not in dispute.

advice regarding "potential repercussions of the SOPs," and that the drafts were intended to remain confidential until finalized. (Id. at 3-4.) As of July 2015, the City says it stamped the draft SOPs with "CONFIDENTIAL ATTORNEY-CLIENT PRIVILEGE" to ensure they were handled appropriately. (Id. at 4 & Ex. 3.) Exhibits 7b and 7d, however, do not bear the confidential marking. (R. 393, Pls.' Mot. Ex. A at 3-36, 38-53.)

Exhibit 7d reflects Dr. Czarnecki's edits to a draft of the SOPs. (R. 418, Def.'s Resp. at 4.) Dr. Czarnecki served as the CFD's "non-employee/acting Medical Director for the Medical Division" before Dr. Wong assumed the role of Medical Director. (Id. at 5.) Once Dr. Wong became CFD Medical Director, the City's attorneys retained Dr. Czarnecki to consult on policies and procedures "in a privileged capacity." (Id.) In its response the City offered to submit to the court for *in camera* review its outside counsel's written retention agreement with Dr. Czarnecki. (Id. at 5 n.6.) The court accepted the City's offer, (R. 429), and on May 6, 2021, the City filed under seal: (1) Dr. Czarnecki's May 31, 2014 medical consulting agreement with the City's outside law firm and the CFD, (R. 432-1); and (2) a similar agreement, dated May 29, 2013, between Northwestern Memorial Physicians Group, the City's outside law firm, and the CFD, (R. 432-2).

Exhibit 41 is a December 18, 2014 email Dr. Wong sent to his work and personal email accounts ("Exhibit 41a"), (R. 393, Pls.' Mot. Ex. A at 54), attaching the following documents: (1) "Paramedic Applicant Report – DRAFT – 12-17-14.doc" ("Exhibit 41b"), (id. Ex. A at 55-64); (2) "Paramedic Analysis5 – 12-16-14.docx"

("Exhibit 41c"), (id. Ex. A at 65-76); (3) "Paramedic Output – 9-17-14.html" ("Exhibit 41d"), (id. Ex. A at 77-87); and (4) "PARAMEDIC COMBINED DATAFILE – 12-16-14.xls" ("Exhibit 41e"), (id. Ex. A at 88-89). The City describes these documents as "a partial draft report regarding a study of CFD paramedics' health and fitness, and underlying data." (R. 418, Def.'s Resp. at 4.) Exhibit 41a does not include any text in the body of the email and is not subject to dispute here, (R. 393, Pls.' Mot. Ex. A at 54), but Plaintiffs seek entry of an order finding that the attachments thereto— Exhibits 41b, 41c, 41d, and 41e—are not protected from disclosure, (id. at 3, 10).

In September 2014 attorneys for certain paramedic candidates, including Plaintiff Jennifer Livingston, notified the City that legal action likely would ensue if the City did not permit their clients to graduate based on physical ability testing. (R. 418, Def.'s Resp. Ex. 6.) The City represents that after receiving this notice and in anticipation of this lawsuit, its attorneys asked Dr. Wong to prepare a paramedic applicant report addressing applicants' health and fitness. (Id. at 5.) On February 4, 2015, Dr. Wong sent the City's attorneys the first draft of the report he prepared. (Id. at 5 & Ex. 7.) The City's attorneys emailed Dr. Wong on February 10, 2015, reminding him to treat the draft report to them as confidential and as an "attorney-client privileged communication." (Id. Ex. 8.) The City asserts that its attorneys used the report and data Dr. Wong compiled "to prepare for this lawsuit and provide legal advice on the report's findings." (Id. at 5-6.)

Plaintiffs used Exhibit 41 during a fact deposition in December 2020 and the City did not object to its use. (R. 393, Pls.' Mot. at 3.) About three months later, on

March 18, 2021, Plaintiffs sent Exhibits 7 and 41 to the City indicating that these exhibits may be used during Dr. Wong's deposition the following day. (Id. at 2.) Within hours of receiving the exhibits, the City attempted to claw them back in accordance with Federal Rule of Civil Procedure 26(b)(5)(B). (Id. at 3 & Ex. B at 1-5.) The City says it first learned of the inadvertent disclosures of Exhibits 7 and 41 on March 18, 2021. (R. 418, Def.'s Resp. at 6.) Plaintiffs deposed Dr. Wong on March 19, 2020, but did not show him Exhibits 7 or 41. (R. 393, Pls.' Mot. at 2-3.) In the current motion Plaintiffs argue that Exhibits 7b, 7d, 41b, 41c, 41d, and 41e ("Subject Documents") are not protected by any privilege. (Id. at 3-10.)

## Analysis

Plaintiffs seek an order preventing the City from clawing back the Subject Documents pursuant to Rule 26(b)(5)(B). (R. 393, Pls.' Mot.) The City responds that the Subject Documents are protected by the attorney-client privilege and/or the work-product doctrine, and that Rule 26(b)(5)(B) allows it to claw them back as inadvertently disclosed. (R. 418, Def.'s Resp.) The court begins by discussing the relevant legal framework and then turns to whether the attorney-client privilege or work-product doctrine protects any of the Subject Documents.

## A.  Applicable Law

The attorney-client privilege protects a communication: (1) between a client and attorney; (2) made in confidence; (3) for the purpose of obtaining legal advice. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008). A communication not authored or received by an attorney may

qualify for protection if it "reveal[s], directly or indirectly, the substance of a confidential attorney-client communication." *Washtenaw Cnty. Emps.' Ret. Sys. v. Walgreen Co.*, No. 15 CV 3187, 2020 WL 3977944, at *2 (N.D. Ill. July 14, 2020) (citation and quotations omitted). Furthermore, an attorney's "comments on, and revisions to, drafts of documents that are intended for ultimate disclosure to third parties can be privileged to the extent that the comments and revisions communicate legal advice and have been maintained [as] confidential." *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012). The party invoking the attorney-client privilege must establish that the privilege applies. *See Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 446 (7th Cir. 2011).

The work-product doctrine "protects documents prepared by an attorney or the attorney's agent to analyze and prepare the client's case." *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). As such, the work-product doctrine protects "party, and not just attorney, preparation" in anticipation of litigation. *Caremark, Inc. v. Affiliated Comput. Servs., Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000). The doctrine shields from disclosure two types of work: (1) an attorney's thought processes and mental impressions; and (2) an attorney's fact-finding investigation. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010). Like the attorney-client privilege, the party asserting the work-product doctrine bears the burden of showing that the party prepared the disputed documents because of the prospect of litigation. *Binks Mfg. Co. v. Nat'l Presto Indus. Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983).

Rule 26(b)(5)(B) governs how parties behave in the aftermath of an unintended disclosure of materials claimed to be privileged. Rule 26 permits parties to claw back inadvertently disclosed documents they believe are subject to a claim of privilege and to prevent the receiving party from using them until the privilege claim is resolved. *See* Fed. R. Civ. P. 26(b)(5)(B).

## B. Exhibits 7b & 7d

Plaintiffs argue that the City should not be permitted to shield from disclosure Exhibits 7b or 7d because they are not protected by any privilege. (R. 393, Pls.' Mot. at 5-7.) Those exhibits include draft SOPs Dr. Wong prepared and Dr. Czarnecki's comments on the draft. (Id. Ex. A at 3-36, 38-53.) The City argues in its response that the draft SOPs are protected by the attorney-client privilege because "they were used to obtain legal advice in confidence." (R. 418, Def.'s Resp. at 9-12.) The City does not argue that Exhibits 7b and 7d are protected by the work-product doctrine.[2] (Id.) Accordingly, the court considers only whether Exhibits 7b and 7d qualify for protection under the attorney-client privilege.

---

[2] The City has not argued that the work-product doctrine applies to Exhibits 7b and 7d, and therefore waives any such argument. *See Kelly v. U.S. Env't. Prot. Agency,* 203 F.3d 519, 522 (7th Cir. 2000). Even if the City had developed this argument, it has not shown that these exhibits were prepared in "anticipation of litigation," or "*because* of the prospect of litigation." *Logan v. Com. Union Ins. Co.,* 96 F.3d 971, 976-77 (7th Cir. 1996) (emphasis in original). The City says it received notice in mid-September 2014 that this litigation could ensue. (R. 418, Def.'s Resp. Ex. 6.) Because Dr. Wong sent himself these exhibits in May 2014, months before receiving such notice, the City cannot show that "the primary motivating purpose behind [the] creation" of these exhibits was because of the prospect of this litigation. *Binks Mfg. Co.,* 709 F.2d at 1119 (internal quotations omitted).

For the attorney-client privilege to attach to Exhibits 7b and 7d, the City—as the party asserting the privilege—bears the burden of showing that the documents qualify as communications exchanged in confidence between a client and an attorney for purposes of obtaining legal advice. *See Upjohn Co. v. United States,* 449 U.S. 383, 394-99 (1981). Here the court finds that the City has not satisfied this burden. The City has not shown that the draft SOPs at issue, or Dr. Czarnecki's comments thereto, qualify as communications between a client and an attorney, or that they were created for obtaining legal advice. Nor has the City established that the drafts or comments reveal legal advice.

The timeline provided by the City belies its argument that the attorney-client privilege applies to these two documents. The City represents that Dr. Wong became CFD Medical Director in January 2014 and thereafter "sought to standardize the Medical Division's operating procedures through a written policy document." (R. 418, Def.'s Resp. at 3.) Given possible "legal implications" the draft SOPs could have on then-pending arbitrations and other claims and litigation, the City decided its attorneys would need to approve the draft SOPs. (Id.) The City's outside law firm entered into an agreement with Dr. Czarnecki, effective May 31, 2014, to obtain his consulting services."[3] (R. 432-1, ¶ 1.1, Ex. A.) Then, on June 20, 2014, Dr. Wong sent

---

[3] While the City also submitted a retention agreement between its outside law firm and Northwestern Memorial Physicians Group, effective May 29, 2013, (R. 432-2 ¶ 1.1, Ex. A), the City does not explain how, if at all, that document relates to Exhibits 7b or 7d. Drs. Wong and Czarnecki are not identified in that agreement. And whereas the May 31, 2014 agreement between Dr. Czarnecki and the City's outside law firm expressly applies to paramedic applicants, (R. 432-1 ¶ 1.1, Ex. A), the May 29, 2013 agreement does not, (R. 432-2 ¶ 1.1, Ex. A).

the "first draft" of the SOPs to the City's attorneys for their review. (R. 418, Def.'s Resp. at 4 & Ex. 4.)

As this timeline reveals, Dr. Wong's May 16, 2014 email to himself, attaching Exhibits 7b and 7d, lacked the first element required for the attorney-client privilege—a communication between a client and attorney. *Judson*, 529 F.3d at 388. In his May 16, 2014 email, Dr. Wong communicated with himself, not the City's attorneys. The document titles of Exhibits 7b and 7d—"CFD Medical Division SOP – Draft – 4-10-14.doc" and "SOPs – Fabrice Edits – 4 3 14.doc"—indicate that these were April 2014 versions of the draft SOPs. (R. 393, Pls.' Mot. Ex. A at 2.) By the City's own account, it was not until June 20, 2014, that Dr. Wong sent the draft SOPs to the City's attorneys for their review. Additionally, Dr. Czarnecki did not enter into a retention agreement with the City's attorneys until May 31, 2014, two weeks after Dr. Wong emailed himself the disputed documents. The City thus fails to establish that Exhibits 7b and 7d qualify as attorney-client communications.

The City argues that Exhibits 7b and 7d nonetheless qualify for protection under the attorney-client privilege because they reveal the substance of an attorney-client communication. (R. 418, Def.'s Resp. at 8.) The City asserts that because Dr. Wong sent the first draft of the SOPs to its attorneys on June 20, 2014, "[a]ll versions" of the SOPs, including Exhibits 7b and 7d, involved "the process of drafting and editing" the SOPs and are privileged. (Id. at 4, 8, 9.) Courts, including this court, have found that where a party has made a request for legal advice and attached a draft document to be reviewed, and an attorney has responded with revisions

reflecting the provision of legal advice, that process of drafting and editing may be protected by the attorney-client privilege. *See, e.g., BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 176, 183 (N.D. Ill. 2018); *Kelley v. Lempesis*, No. 13 CV 4922, 2015 WL 4720054, at *4 (N.D. Ill. Aug. 7, 2015). But here the City has not shown that Dr. Wong—or anyone else from the City or the CFD—requested legal advice related to Exhibits 7b or 7d on or before May 16, 2014, when he emailed himself these documents. Nor has the City established that its attorneys were involved in reviewing, drafting, or editing the versions of the draft SOPs reflected in Exhibits 7b or 7d on or before that date. (See R. 393, Pls.' Mot. at 5.) As such, neither Exhibit 7b nor 7d could have revealed—either directly or indirectly—confidential legal advice obtained from attorneys. *See Washtenaw Cnty.*, 2020 WL 3977944, at *2.

The very nature of the draft SOPs and Dr. Czarnecki's comments further undermine the City's argument that the drafts are privileged. Plaintiffs correctly point out that the draft SOPs "consist of rules, requirements, procedures and guidelines" for CFD Medical Division employees. (See R. 393, Pls.' Mot. at 5.) The documents describe SOPs of the Medical Division, as their title confirms. (Id.) They define the purpose and scope of services provided by the Medical Division, introduce the doctors and staff who serve in the division and explain their roles, and set forth operating procedures, such as guidelines for scheduling appointments, performing medical evaluations on applicants, and maintaining patient charts. (Id. Ex. A at 3-36, 38-53.) Such documents, prepared in the ordinary course of business, do not qualify for protection under the attorney-client privilege unless the "predominant

purpose" of the document was to "obtain[] or provid[e] legal advice." *See Smith-Brown v. Ulta Beauty, Inc.*, No. 18 CV 610, 2019 WL 2644243, at *3 (N.D. Ill. June 27, 2019).

The City accepts that "a document *created* primarily for operational purposes rather than for legal advice is not privileged." (R. 418, Def.'s Resp. at 10 (emphasis in original) (citing *Smith-Brown*, 2019 WL 2644243, at *2-3).) But the City asserts that here Dr. Wong created the draft SOPs predominantly for obtaining legal advice. (Id.) What the City lacks, however, is evidence supporting this assertion. There are no handwritten comments on the draft SOPs reflecting attorney comments. (Id. Ex. A at 3-36, 38-53.) No attorney is copied on Dr. Wong's email to himself, and there is no mention that legal advice is being sought regarding any of the information in the attachments. (Id. Ex. A at 2.) No attorney representing the City has submitted an affidavit or declaration attesting that he or she authored, received, or provided legal advice regarding Exhibits 7b or 7d on or before May 16, 2014. And the City did not submit a privilege log for the Subject Documents or provide in its response the "basic requirements for a privilege log (*e.g.*, date of the document, author and recipients)" to show that the exhibits are privileged. *S.E.C. v. Sentinel Mgmt. Grp., Inc.*, No. 07 CV 4684, 2010 WL 4977220, at *5 (N.D. Ill. Dec. 2, 2010). In short, there is nothing in Exhibits 7b or 7d—or any other documents supplied by the City to the court— suggesting that they are confidential, attorney-client privileged communications. *See Carmody v. Bd. of Trustees*, 893 F.3d 397, 405 (7th Cir. 2018) ("Communications from attorney to client are privileged only if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence.").

Dr. Wong's deposition testimony, relied upon by Plaintiffs in the current motion, supports the court's analysis. Specifically, Plaintiffs point to Dr. Wong's testimony that the CFD had an internal written document—the CFD Medical Division SOP, which sets forth the policies and procedures of the operation of the Medical Division. (R. 393, Pls.' Mot. Ex. C at 74-77.) That document did not exist before Dr. Wong started his position in January 2014. (Id. Ex. C at 74.) Dr. Wong created the SOP to "standardize procedures and operationally," even though the document remained "a work in progress" in draft form. (Id. Ex. C at 74-77.) Plaintiffs assert that, based on Dr. Wong's own testimony, Exhibits 7b and 7d constitute "operational documents, created and used for operational purposes"—and not documents created for the purpose of obtaining legal advice, as required for the attorney-client privilege to attach. (Id. at 5-6.)

The City objects to Plaintiffs' reliance on Dr. Wong's deposition testimony regarding the draft SOPs given that the City attempted to claw back the Subject Documents pursuant to Rule 26(b)(5)(B). (R. 418, Def.'s Resp. at 8-9.) Using "tainted testimony" from Dr. Wong's deposition to rebut the claim of privilege contravenes Rule 26(b)(5)(B), the City argues. For support the City cites this court's ruling in *Woodard v. Victory Records, Inc.*, No. 11 CV 7594, 2013 WL 4501455, at *2 (N.D. Ill. Aug. 22, 2013), in which the court affirmed the requirement of Rule 26(b)(5)(B) that privileged information inadvertently disclosed may not be used until the claim of privilege has been resolved. The City asserts that "Plaintiffs used the May 2014 SOPs

Document at Dr. Wong's deposition" in violation of this authority.  (R. 418, Def.'s Resp. at 9.)

But the City does not explain how Plaintiffs' questioning of Dr. Wong during his deposition resulted in his testimony being "tainted" in contravention of Rule 26(b)(5)(B).  During Dr. Wong's deposition Plaintiffs did not introduce the disputed documents as exhibits or show them to him.  (R. 393, Pls.' Mot. at 3 & Ex. C.) Moreover, the City has made no showing that Plaintiffs divulged any information the City claims to be privileged in asking Dr. Wong questions about the Medical Division's policies or procedures.  For example, Plaintiffs asked Dr. Wong:

> Q:    To be clear, is there a written Chicago fire department policy or procedure about the fitness for duty evaluation?
>
> . . .
>
> A:    We had an internal document in CFD that we worked on.
> Q.    What was that document?
> A.    It was the CFD medical division SOP.
> Q.    And that was a written document that was about the policies and procedures of the operation of the medical division, correct?
> A.    That is correct.

(Id. Ex. C at 74.)  Because the City has not identified specific questions posed by Plaintiffs that allegedly violate Rule 26(b)(5)(B), and the court has found none in the testimony provided, the court declines to disregard Dr. Wong's testimony about the draft SOPs.  However, as explained above, the court finds the attorney-client privilege inapplicable here even without relying on Dr. Wong's testimony.

Plaintiffs further contend that the attorney-client privilege does not apply to Exhibits 7b or 7d because the City shared the draft SOPs with newly hired nurse

practitioners who were "outside the attorney-client relationship" and who did not treat the documents as confidential. (Id. at 6.) For support Plaintiffs cite Dr. Wong's testimony that the draft SOPs were given to new Medical Division employees in 2017 or 2018. (Id. at 6 & Ex. C at 78-79.) The court agrees with the City that Dr. Wong's testimony does not show that the nurses failed to handle the drafts appropriately. (See R. 418, Def.'s Resp. at 11.) There also is no evidence that the draft SOPs distributed to the nurses were the same versions as those attached to Exhibit 7. In any event, because the court finds that the attorney-client privilege does not attach to Exhibits 7b or 7d, it need not reach Plaintiffs' argument in this regard.

## C. Exhibits 41b, 41c, 41d & 41e

Plaintiffs also argue that Exhibits 41b, 41c, 41d, and 41e are not protected by any privilege, and that even if the documents qualified for such protection, the City waived the privilege. (R 393, Pls.' Mot. at 7-10.) On December 18, 2014, Dr. Wong emailed himself these four documents, which were titled "Paramedic Applicant Report – DRAFT – 12-17-14," "Paramedic Analysis 5 – 12-16-14," "Paramedic Output – 9-17-14," and "PARAMEDIC COMBINED DATAFILE – 12-16-14.xls." (Id., Ex. A at 55-89.) These documents relate to a study of CFD paramedics' health and fitness and the underlying data. (R. 418, Def.'s Resp. at 4.) The City asserts that the documents are protected by the attorney-client privilege and work-product doctrine because they were "prepared in anticipation of this lawsuit at the direction of the City's attorneys." (Id. at 12.)

With respect to the work-product doctrine, the City bears the burden of showing that these documents were prepared by an attorney or the attorney's agent in anticipation of litigation for the purpose of analyzing, evaluating, and preparing a client's case. *Smith*, 502 F.3d at 689; *Caremark*, 195 F.R.D. at 616. The doctrine creates a "zone of privacy" for attorneys to "analyze and prepare their client's case free from scrutiny or interference by an adversary." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 734 (N.D. Ill. 2014). The Seventh Circuit has confirmed that the work-product doctrine protects not only an attorney's thought processes and mental impressions but also an attorney's fact-finding investigation where "some articulable claim, *likely* to lead to litigation, [has] arisen." *See Sandra T.E.*, 600 F.3d at 622 (emphasis in original) (citation and quotations omitted). That said, "precautionary documents developed in the ordinary course of business for the remote prospect of litigation" are not protected by the doctrine. *Id.*

Here the City had reason to anticipate that this litigation could ensue after it received the September 15, 2014 letter, notifying it that certain paramedic candidates were prepared to file a lawsuit if they were barred from graduating based on physical ability testing. (R. 418, Def.'s Resp Ex. 6.) The City represents that after receiving this letter its attorneys asked Dr. Wong to prepare for their review a paramedic applicant report addressing paramedic candidates' health and fitness. (Id. at 5.) For support the City submits correspondence showing that Dr. Wong sent a draft of his report—titled "Paramedic Applicant Report – DRAFT – 2-4-15"—to the City's attorneys on February 4, 2015. (Id. Ex. 7.) The City also submits its October 9, 2020

privilege log, in which the City logged as work product another version of the same report. (Id. Ex. 9.) Based on this evidence, the City argues that Dr. Wong generated Exhibits 41b, 41c, 41d, and 41e to assist the City in this litigation.

Even taking as true the City's assertions, the court must determine whether "the primary motivating purpose behind [the] creation" of the disputed documents was "to aid in possible future litigation." *See Binks Mfg. Co.*, 709 F.2d at 1119 (internal citation and quotations omitted). And perhaps even more fundamentally, the court must assess whether the documents reflect the type of information that may be protected by the work-product doctrine. This court is mindful of protecting attorney thought processes and impressions, as well as any attorney fact-finding investigation tied to this litigation. *See generally Sandra T.E.*, 600 F.3d 612. What gives the court pause, however, is that a review of these exhibits does not suggest that they reflect attorney work product, or that the primary purpose for their creation was to help the City analyze, evaluate, or prepare for a trial in this case. Even more troubling, the City did not submit a privilege log for the Subject Documents, identifying an attorney who directed Dr. Wong to prepare Exhibits 41b, 41c, 41d, or 41e, or the date on which such a communication took place. *See Sentinel Mgmt.*, 2010 WL 4977220, at *5 (setting forth "basic requirements for a privilege log (*e.g.*, date of the document, author and recipients").

As Plaintiffs point out, Exhibit 41b appears to be a draft report intended to publish findings from a study examining CFD paramedic applicants' obesity and their performance in the CFD Training Academy. (R. 393, Pls.' Mot. at 7.) This exhibit

includes: (1) a title page ("Evaluation of Paramedic Applicant Health and Fitness, a Joint Report of the CFD Medical Division and CFD Training Division") dated December 2014; (2) an acknowledgements page, thanking the CFD Training and Medical Divisions for their contributions to the report; (3) a page for "Chapter 1" including general information relating to obesity among paramedic applicants, their performance on fitness testing, and recommendations for improving fitness; and (4) template pages. (Id. Ex. A at 55-64.) The report makes no mention of this lawsuit, any threatened litigation, or specific paramedic candidates. (Id.) It also includes no markings suggesting the document is confidential or privileged—and its acknowledgements page, giving credit to two separate divisions, suggests that it was not a document intended to be kept confidential.

Plaintiffs assert that Exhibit 41b was created to examine obesity and a link to pass-fail rates in the Training Academy, rather than to analyze, evaluate, and prepare for this litigation. (See id. Ex. C at 30-31.) For support they cite Dr. Wong's deposition testimony, in which Dr. Wong explained why the CFD fitness project was conducted:

> We were looking at ultimately creating a healthy workforce and also looking at what the impact is on obesity—the prevalence [sic] of obesity in the fire service. And we were looking at, ultimately, we can get some useful prevention messages and behavioral health messages out there. Because we were focussed [sic] really on ultimately creating a healthy workforce.

(Id. at 31.) In light of Dr. Wong's explanation, the court finds that Exhibit 41b at least was prepared for a dual purpose: (1) to conduct an obesity study of paramedic applicants' health and fitness to "create[e] a healthy workforce," as Dr. Wong

testified, (id. Ex. C at 31); and (2) to assist lawyers in this litigation, as asserted by the City, (R. 418, Def.'s Resp. at 5). However, because the City did not establish even the basic facts required for a privilege log, such as which attorney asked Dr. Wong to prepare Exhibit 41b or when such a communication occurred, the court finds that the City did not show that the primary purpose of Exhibit 41b was to aid in this litigation.

Similarly, Exhibits 41c, 41d, and 41e include only raw data without interpretation. (R. 393, Pls.' Mot. Ex. A at 65-89.) The City did not explain how such "data compilations" amount to attorney work product or provide evidence demonstrating that such information was shared with its attorneys. (R. 418, Def.'s Resp. at 5.) The City instead seems to rely only on the fact that these exhibits were "prepared within months after Plaintiffs first threatened the City with this lawsuit" and that they generally relate to the subject matter of the lawsuit. (Id. at 12.) But to qualify for protection under the work-product doctrine, the City was required to establish that these exhibits were part of an attorney's fact-finding investigation linked to the prospect of this litigation, rather than documents prepared by Dr. Wong in the ordinary course of business. *See Sandra T.E.,* 600 F.3d at 622 ("Work-product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation.") (citation and quotation omitted). Merely because Dr. Wong emailed a later draft to the City's attorneys does not then convert all drafts as work product.

Even giving the City the benefit of the doubt, it is telling that when Plaintiffs showed Exhibits 41b and 41c to a deponent in this litigation in December 2020, the

City did not object that the information was privileged. (R. 393, Pls.' Mot. at 8.) It was not until nearly three months later that the City claimed that Exhibit 41 had been inadvertently produced. (Id.) The court appreciates the City's explanation that Plaintiffs neglected to share the disputed documents with the City before the December 2020 deposition, did not enter the documents as exhibits at the deposition, and merely showed the documents on the screen during a video deposition. (R. 418, Def.'s Resp. at 14-15.) The court's concern, however, is that nothing in the documents themselves alerted the City that these documents were privileged. The court thus finds that the City has not established that Exhibits 41b, 41c, 41d, and 41e include or disclose the type of information protected by the work-product doctrine. *See Sandra T.E.,* 600 F.3d at 621-22.

As to the attorney-client privilege, there is no doubt that such protection attaches to communications between Dr. Wong and the City's attorneys exchanged in confidence for purposes of obtaining legal advice. *See Upjohn Co.,* 449 U.S. at 394-99. But the City did not establish that the four disputed exhibits were sent to the City's attorneys for purposes of securing legal advice. As was the case with the documents in Exhibit 7, the City did not satisfy the first element required for the privilege to attach to the documents in Exhibit 41—that they were part of an attorney-client communication. *Judson*, 529 F.3d at 388. The City submitted evidence showing that in early February 2015, Dr. Wong and the City's attorneys began to exchange confidential communications regarding a document titled "Paramedic Applicant Report – DRAFT – 2-4-15." (R. 418, Def.'s Resp. Exs. 7, 8.) However, the

four exhibits in question do not bear that title, and the City never demonstrated that Dr. Wong sent Exhibits 41b, 41c, 41d, and 41e to the City's attorneys for their review on or before December 18, 2014, the date he sent the documents to himself. As a result, the City fails to show that the documents qualify as an attorney-client communication, that they were created for the purpose of obtaining legal advice, or that they reveal legal advice.

Even if the work-product doctrine or attorney-client privilege were found to apply to the four exhibits, the privilege may be waived where disclosed in a manner that "enable[s] an adversary to gain access to the information." *See Behnia v. Shapiro*, 176 F.R.D. 277, 279-80 (N.D. Ill. 1997). Plaintiffs argue that their use of Exhibits 41b and 41c during the December 21, 2020 deposition of Jose Santiago, without any objection by the City, waives any privilege that otherwise may apply here. (R. 393, Pls.' Mot. at 8-10.) In fact, the City did not object to the use of the disputed documents until March 18, 2021. (Id. at 2, 8.) The City contends it did not learn that it had inadvertently disclosed Exhibit 41 until March 2021 but does not deny that it was represented at Santiago's deposition when the document was used three months earlier. (R. 418, Def.'s Resp. at 3, 6; see also R. 393, Pls.' Mot Ex. D.)

Federal Rule of Evidence 502(b) addresses whether an inadvertent disclosure of privileged documents operates as a waiver of privilege. *See Woodard*, 2013 WL 4501455, at *3. In analyzing whether the City took adequate steps to avoid a waiver, the court considers whether: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder

promptly took reasonable steps to rectify the error." *Carmody*, 893 F.3d at 405 (citing Fed. R. Evid. 502(b)). Of particular concern to the court here is the fact that Plaintiffs showed Santiago Exhibits 41b and 41c in December 2020, while the City was present and lodging objections to other matters. The City did not object to Plaintiffs' use of these documents at the deposition or thereafter. It was not until mid-March 2021 that the City invoked Rule 26(b)(5)(B) to attempt to claw back Exhibit 41. Given the circumstances presented here, the court finds that the City failed to take reasonable steps to rectify its supposedly inadvertent disclosure. Accordingly, neither the work-product doctrine nor the attorney-client privilege applies to Exhibits 41b, 41c, 41d, or 41e.

## Conclusion

For the foregoing reasons, Plaintiffs' motion to resolve privilege disputes relating to certain documents the City produced and is now attempting to claw back as inadvertently produced is resolved in Plaintiffs' favor. As such, Plaintiffs are not required to return the Subject Documents and are permitted to use them in this case.

**ENTER:**

Young B. Kim
**United States Magistrate Judge**