IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jennifer Livingston, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> The City of Chicago, a municipal corporation, <br><br> *Defendant*. | Case No. 16-cv-10156 <br><br> Hon. Sara L. Ellis <br><br> Magistrate Judge Young B. Kim |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO MARY YOUNGREN'S FAILURE TO MITIGATE**

The City of Chicago ("the City") submits this Memorandum of Law in support of its motion for partial summary judgment as to Plaintiff Mary Youngren.

**I.     INTRODUCTION**

Mary Youngren ("Youngren") is a former Chicago Fire Department paramedic candidate. After suffering an injury in September of 2015, she was placed on suspended assignment in compliance with City policy. Her reinstatement rights and obligations were governed by the terms of the City's Suspended Assignment Policy. Instead of returning to the Chicago Fire Department Academy ("Academy") under the terms of that policy, she sought employment elsewhere and joined this suit.

In March of 2017, the City made an unconditional offer of reinstatement to Youngren to return to her former position under the terms of the Suspended Assignment Policy, applicable to her when she started her leave. Youngren's rejection of this offer tolls any backpay award she may receive in this litigation as of March 27, 2017.

Youngren likely will claim that the City's offer was conditional as it required her to comply with the terms of the Suspended Assignment Policy before returning to the Academy and also likely will claim her rejection of the offer was reasonable. This theory would require the City to ignore the

1

terms of this leave policy in Youngren's case, effectively permitting her to avoid requirements of the policy which are applicable to all other paramedic candidates on suspended assignment. The authority governing mitigation of damages does not require an employer to violate its own policies when offering reinstatement. In fact, the employer is required only to offer the employee the same or similar position she held before the alleged act of discrimination. That is exactly what the City did here. It offered to return an employee on suspended assignment reinstatement upon compliance with the very policy that provided for the leave in the first instance.

## II. UNDISPUTED FACTS

Youngren was enrolled in the Academy in one of its 2014-2015 "Alphabet Classes." (Joint Statement of Facts ("SOF") at ¶ 15.) Fire paramedic candidates in those classes had to meet academic and physical requirements to graduate.(*Id.* at ¶¶ 13, 15, 31; Ex. 4 [Candidate Manual].) This included a requirement to pass two physical abilities tests, the Step Test and the Lift and Move Test ("Academy Tests"). (*Id.* at ¶ 15.) These tests are at issue in this Lawsuit. Dkt. 407 (Ansr. To Amd. Cp., ¶ 30).

Youngren claims she was injured at the Academy and missed classes from September 14-18, 2015. (SOF, at ¶¶ 2-3, 17-18, Ex. 2 [Notice of Suspended Assignment]). She was qualified for and received suspended assignment leave under the City's formal written policy. (SOF, at ¶¶ 2-3, 17-18, Ex. 2; Ex. 4, pp. 20-21). Employees on suspended leave are allowed to return to the Academy upon receiving medical clearance, provided the Candidate continues to meet all normal and customary hiring prerequisites." (SOF, at ¶¶ 2-3, Ex. Ex. 2; Ex. 4, pp. 20-21). The policy also states the Candidate would return to the Academy as part of a new Academy class. (*Id.*) An individual on suspended assignment is given one opportunity to return to the next Academy session. (*Id.*) Youngren received and signed this Notice. (SOF ¶ 2; Ex. 2.)

In 2016, while was on suspended assignment with CFD, Youngren commenced working full time as a paramedic for Trace Ambulance, a job she still holds. (SOF, ¶ 34.) On July 5, 2016, Youngren

2

expressed concerns about the job functions of a CFD paramedic. (SOF, ¶ 21.) Specifically, she told co-plaintiff Donna Griffin via text: "I'm worried about actually lifting on the street," and "I'm concerned about the call volume that [CFD paramedics] do. I don't do that kind of call volume at Trace. That can also take a toll." (*Id.*)

On March 8, 2017, the City emailed Youngren, inviting her to continue processing for a paramedic candidate position. (SOF at ¶¶ 22, Ex. 21 [March 8, 2017 Email Communication])[1]. Plaintiff appeared interested in returning to the Academy, reported for processing on March 13, 2017, and submitted the required documentation. (*Id.* ¶ 24.) However, she did not continue further in the process. (*Id.* ¶ 24.) Youngren testified that the reason she stopped processing in 2017 was because she would need to go through the Academy and did not believe she was physically capable of doing so, even though she understood she would not have to complete the physical tests challenged in her lawsuit. (*Id.* ¶ 24.) Youngren did not obtain or provide to the City an up-to-date medical evaluation or documentation to support her position. (*See, e.g.,* SOF ¶ 29.) She also did not request any accommodation through the City's formal accommodation policy. (SOF, ¶¶ 12, 24, Ex. 13 [Reasonable Accommodation General Order;] Ex. 14 [Reasonable Accommodation Policy]), Ex.16, Youngren Tr. at 283:5-17.)

On March 27, 2017, the City provided Youngren, through her counsel, with a formal offer to return to the Academy under the terms of the Suspended Assignment Policy. (SOF at ¶ 22; Ex. 22) As required of everyone on suspended assignment, Youngren had to be medically cleared and continue to meet the City's standard hiring prerequisites. (SOF at ¶ 22, Ex. 22 [Offer of March 27, 2017].) The offer to return to the Academy was unrelated to settlement discussions, and did not require Youngren to release or settle any claims—including those made in this suit. (SOF at ¶ 23) Plaintiff was *not*

---

[1] This was an invitation only, not yet a formal offer of reinstatement.

3

1055296\313158235.v2

required to take the physical tests challenged in this suit. (*Id.* at ¶ 24) Plaintiff has not sought employment with the City since these offers were made. (*Id.* at ¶¶ 24, 25, 27.)

Inexplicably, on September 4, 2018, Youngren stated in supplemental Rule 26 disclosures that she seeks reinstatement as part of the relief in this case. (SOF, ¶ 30, Ex. 23 [R. 26(a)(1) Disclosure).) Just eight days later, Youngren advised the City that she believed her alleged injury prevented her from performing the job of CFD fire paramedic. (SOF, ¶ 27; See also SOF ¶ 24.) She did not obtain or provide to the City any updated medical evaluation or documentation to support such a claim. (*See, e.g.,* SOF ¶ 29.) Youngren had not obtained an MRI and had not been to physical therapy since April 2016. (*Id.*) Youngren also did not avail herself to the accommodation process, even after the City specifically offered her that opportunity. (*Id.* at ¶¶ 26, 28.) Instead, Youngren has chosen to remain employed at Trace. (SOF, ¶34.)

### III.  STANDARD

Pursuant to Fed. R. Civ. P. 56(a), "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citing *Haywood v. Lucent Techs.*, 323 F.3d 524, 533 (7th Cir. 2003)).

### IV.  ARGUMENT

**A.  A Title VII Plaintiff's Duty to Mitigate**

A Title VII plaintiff has a duty to mitigate her backpay damages. 42 U.S.C. 2000e-5(g) ("Interim earnings or amounts earnable with reasonable diligence … shall operate to reduce the back pay otherwise allowable.") *See McCoy v. Oscar Mayer Foods*, No. 96-1328, 1997 U.S. App. LEXIS 4635,

4

at *4 (7th Cir. Mar. 6, 1997) (back pay is limited by a duty to mitigate and is reducible interim earnings, or by the amount the plaintiff would have earned with 'reasonable diligence.')

The City asserted Youngren's failure to mitigate damages as an affirmative defense. (Dkt. 407, at 26, Sixth Affirmative Defense.) To prevail on that defense, the City "must prove both that the employee was not reasonably diligent in seeking other employment, and that with the exercise of reasonable diligence there was a reasonable chance the employee might have found comparable employment." *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234 (7th Cir. 1986); *Stragapede v. City of Evanston,* 125 F. Supp. 3d 818, 824 (N.D. Ill. 2015). Comparable employment are those positions that are "substantially equivalent positions [that] afford 'virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status.'" *Maxey v. Allstate Ins. Co.,* (17 C 8392), 2020 U.S. Dist. LEXIS 29813 *25-26 (N.D. Ill. Feb. 21, 2020) *citing Ford Motor Co., supra.)*

In *Ford Motor Co. v. EEOC*, the United States Supreme Court ruled that, "the unemployed or under-employed claimant's statutory obligation to minimize damages requires [her] to accept an unconditional offer of the job originally sought, even without retroactive seniority." 458 U.S. 219, 232, 234 (1982). Plaintiff's failure to accept an unconditional offer tolls the accrual of backpay. *Id.* at 231-32 ("[A claimant] forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied."); *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1203 (7th Cir. 1989) ("An offer of reinstatement tolls the accrual of damages only if it 'afford[s] the claimant virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status"). The employer is not required to offer plaintiff a better opportunity than the one she had at the time of discharge (or here, the time she left the Academy due to a medical layup). See *Ford,* 458 U.S. at 236.

In *Ford*, Plaintiffs sought warehouse positions at Ford, but the company hired male applicants instead. 458 U.S. at 221-223. The women then sought and received alternative employment at General Motors. *Id.* at 222. The EEOC sued Ford for sex discrimination on their behalf. *Id.* at 223. During the

5

litigation, Ford made job offers to two of the plaintiffs then employed at GM. *Id.* at 224. The lower courts held that the offers were not "unconditional" because they did not provide plaintiffs with retroactive seniority. *Id.*

On appeal, Ford argued that it had offered Plaintiffs the positions they had sought at Ford and their back pay was therefore tolled. 458 U.S. at 227. The Court agreed with Ford, holding that a claimant is required to accept an unconditional offer of the job originally sought, even without seniority. *Id.* at 233. This standard governed even though Plaintiffs were employed elsewhere. Plaintiffs could accept Ford's offer and leave their employment at GM, while preserving their right to backpay up to the time they returned to Ford. *Id.* at 235. If they rejected Ford's offer to stay at GM, they would have "determined that the value of their present employment was more valuable to them" than Ford's offer. *Id.* at 236.

Plaintiffs may face difficult choices, but they are choices they need to make: accept the offer and start in the defendant-employer's employ or stay with subsequent employment they may find more attractive. *Id.* at 238; See also 458 U.S. at 237 n. 26, enumerating many factors that may lead a plaintiff to pick one job over another. "Absent special circumstances, the simple rule that the ongoing accrual of backpay liability is tolled when a Title VII claimant rejects the job he originally sought", a policy that comports with Title VII's goal of making victims of discrimination whole." *Id.* at 238-239[2].

**B.     Two Part Analysis of Employer's Offer of Employment**

Title VII seeks to make a victim of discrimination whole, placing her into "a position where [she] would have been were it not for the unlawful discrimination." *Ford,* 458 U.S. at *232. To limit backpay, which is part of this "make-whole" relief, the employer must show it offered the same or comparable position Plaintiff had held (or sought) and that Plaintiff's rejection of it was unreasonable.

---

[2] The rule that the EEOC proposed on unconditional requiring, among other things, an award of seniority, "would have the perverse result of requiring the employer in effect to insure the claimant against the risk that the employer might win at trial." 458 U.S. at 238.

*Ortega v. Chi. Bd. of Educ.*, 280 F. Supp. 3d 1072, 1101 (N.D. Ill. 2017) *citing Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, (7th Cir. 1989). This does not require an employer to put plaintiff in a position better than they would have been in had they not been discriminated against. *Ford,* 458 U.S. at *234 (plaintiffs are entitled to employment they would have held had it not been for discriminatory actions, not to "catapult them into a better position than they would have enjoyed in absence of discrimination."); *EEOC v. Fox Point-Bayside Sch. Dist.,* (80-C-674) 1984 U.S. Dist. LEXIS 25424 *26 (E.D. Wis. Jan. 9, 1984) (plaintiff was not entitled to be placed in a better position than she had been prior to the defendant's discriminatory action).

The two-part analysis before this Court requires an examination of the employer's offer and the plaintiff's basis for rejection of the offer. *Ortega,* 280 F. Supp. 3d at 1101, *citing Graefenhain,* 870 F.2d at 1203. First, the offer must afford Plaintiff "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *Graefenhain,* 870 F.2d at 1203, *citing Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 624 (6th Cir. 1983). An offer must not require the discharged employee to compromise her claims pending against the employer in order to accept the offer. *See Miano v. A.C. R. Advertising,* , 875 F. Supp. 204, 221(S.D.N.Y 1995). If the offer is for a comparable job, the court then examines the basis for a claimant's reason(s) to reject it. *Ortega,* 280 F. Supp. 3d at 1101.

An offer of reinstatement is "unconditional" even if a plaintiff must satisfy certain pre-hire criteria in order to be hired into a safety-sensitive position, so long as the employer voluntarily eliminated the allegedly unlawful pre-hire practice. *See Grace v. City of Detroit*, 216 F. App'x 485, 493 n.2 (6th Cir. 2007) (where employer had eliminated allegedly discriminatory hiring practice, plaintiff had an obligation to mitigate damages by reapplying for employment); *Clarke v. Frank,* 960 F.2d 1146, 1152 (2nd Cir. 1992) (Post Office's offer of reinstatement was unconditional even if it required compliance with prerequisites such as passing a driving test and a physical examination); *Morris v. Amer. Nat'l Can*

*Corp.,* 952 F.2d 200, 202-203 (8th Cir. 1991) (employee suffered injury on duty, sued for sexual harassment, and was offered reinstatement subject to a physical exam and review of her medical records. The governing labor agreement and Plaintiff's health allowed the employer to impose these requirements and did not make the offer 'conditional', distinguishing *Orzel, supra.*)

Employees are not "entitled to be placed in a better position" than they would have held before the alleged discriminatory act. *See, i.e., Ford,* 458 U.S. at 235, 239-240. In other words, Youngren was not entitled to anything more than an invitation to return to the Academy per the terms of the Suspended Assignment Policy, and not, to use the term of the Supreme Court, to "catapult" into the position of a CFD paramedic.

C.  **City's Offer was an Unconditional Offer of Reinstatement.**

On March 8, 2017, the City made an unconditional Offer to reinstate Youngren to the position of fire paramedic candidate. (SOF, ¶¶ 22-25; Dkt. 482, at Ex. 1; Dkt. 517, at 4) Pursuant to the terms of Suspended Assignment Policy, paramedic candidates on suspended assist are required to obtain medical clearance and must continue to meet all normal and customary hiring prerequisites. (SOF ¶ 2; Ex. 2 [Notification of Suspended Assignment]). The City reiterated these terms in its March 27, 2017, correspondence to Plaintiff's counsel. (SOF ¶ 22; Ex. 22 [Offer of March 27, 2017]). The position and its requirements and expectations were nearly identical to her prior position—with one notable exception: Youngren would not be required to undergo the Academy Tests she claims in this Lawsuit to be discriminatory. (SOF, ¶ 24.). The Plaintiff was also not required to compromise her position in this litigation. (SOF ¶ 23). As the Offer was unconditional and for would reinstate her to the status she had prior to her alleged injury, Youngren had a statutory obligation to mitigate her damages by accepting it.

This case is distinguishable from *Ernst v. City of Chicago,* 2018 U.S. Dist. LEXIS 215340, (N.D. Ill. Dec. 21, 2018) for multiple reasons. In *Ernst,* Plaintiffs Ernst, Hoard, Kean, Lahalih and Res failed

8

the pre-hire physical abilities test ("PAT") in 2004. *Id.* at *6. They never entered the Academy and most obtained employment outside of CFD. *Id.* at *7-15. In 2016, despite the District Court's conclusion that the PAT was valid, the Seventh Circuit reversed and remanded it to the District Court to enter judgment accordingly. *Id.* at *6. On remand, the parties stipulated that, "but for discrimination, each Plaintiff would have been hired as a firefighter paramedic on April 1, 2005." *Id.* at *6.

In *Ernst*, the City invited the five plaintiffs to re-start the process for paramedic positions after the PAT had been replaced. 2018 U.S. Dist. LEXIS 215340, *18-19. The District Court held that these invitations were not unconditional offers. A focal point of her decision was that the City's offer was at odds with the parties' stipulation that each plaintiff would have been hired as paramedics but for discrimination that occurred nearly ten years prior. 2018 U.S. Dist. LEXIS 215340, at *41-42. For similar reasons, the Court found the City's 2018 invitations were also conditional. *Id.* at **46-47.

This case is also different from *Orzel v. Wauwatosa Fire Dept.,* 697 F.2d 743 (7th Cir. 1983), which dealt with the issue of a mandatory retirement age for members of the fire department, including department brass. 697 F.2d at 746. Plaintiff was forced out of the Department in 1978 at age 55. *Id.* The court disagreed that age was a *bona fide* job qualification for upper level fire department positions and rejected the Department's assertion that the plaintiff had failed to mitigate his damages when he rejected its offer of reinstatement. *Id.* at 755-757. The Department had conditioned the plaintiff's return to work on a medical evaluation, despite the fact he just recently underwent one and had passed "with flying colors." *Id.* at 757. The plaintiff in that case also was concerned about the impact accepting the offer would have on his legal position. *Id.* Moreover, the Department indicated that it planned to terminate plaintiff as soon as it felt it had the legal right to do so and had refused to commit to an earlier resolution that plaintiff had asserted he had accepted. *Id.* All of these facts led to the court's finding that the offer was conditional and the plaintiff's rejection of it was reasonable. *Id.*

The facts distinguishing this matter from *Ernst* and *Orzel* include that Youngren was already admitted to the Academy and participating in it until she suffered an injury. (SOF ¶ 2; Ex. 2 [Notification of Suspended Assignment]). Her leave and possible reinstatement to the CFD was governed by the terms of the City's Suspended Assignment Policy. (SOF ¶ 2; Ex. 2 [Notification of Suspended Assignment]). Those terms included medical clearance and the continued obligation to meet all existing hiring prerequisites. (SOF ¶ 2-3; Ex. 2 [Notification of Suspended Assignment]). Unlike Orzel, who recently had a medical evaluation, and had he remained employed, would not have required another one, Youngren had suffered an injury, the City had no current medical information about her status, and it had every reason to require it under its Suspended Assignment Policy. Unlike Plaintiffs in *Ernst,* Plaintiff was given the opportunity to return exactly where she had left off: a position in the Academy. The City had not made any stipulation affecting the terms of its offer to Youngren.

This also is not a situation where the parties had stipulated (as in *Ernst*) that Youngren would have been hired as a paramedic but for a discriminatory test. As noted in *Ford,* Youngren should have no greater rights than others on Suspended Assignment. To allow her to bypass the terms of the policy she herself acknowledged when she signed the Notice on September 21 2015, would allow her to "catapult" directly into the Academy without complying with the terms of her suspended assignment that included the ongoing obligation to remain qualified for the Academy. No other employee on suspended assignment was given such a privilege, and Youngren is not entitled to it.

### D.      Youngren unreasonably rejected the unconditional offer.

When an employee rejects unconditional offer of reinstatement under *Ford*, "the employee must then come forward with proof that [her] decision to decline reinstatement was justified." *Miano*, 875 F. Supp. at 224; *see also*, *EEOC v. R. R. Donnelley & Sons Co.,*(01 C 4218), 2002 U.S. Dist. LEXIS 14106, *10 (N.D. Il. Jul. 29, 2002) (preferring his new job to the one he lost at defendant-employer

10

does not constitute 'special circumstances' that justified rejection of the unconditional offer of reemployment under *Ford*); (*Giandonato v. Sybron Corp.*, 804 F.2d 120, 124 (10th Cir. 1986) ("Donato did not comply with *Ford Motor Co.'s* mandate of minimizing his damages by refusing his employer's offer of reinstatement for the personal reasons he asserted (wife's illness and desire not to work under Carlson); *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 & n.1 (8th Cir. 1982) (concluding that no jury could find employee's refusal of offer of reinstatement reasonable, where employee's personal reasons for refusal were that he desired to have the EEOC investigation continue, that he was traumatized by the death of his wife, and that he did not wish to forego his new job).

Here, Youngren's rejection of the City's Offer was not justified. She was well aware of the terms of the Suspended Assignment Policy, a policy that governed all fire paramedic candidates. Had she required accommodations, she could have accepted the City's offer to discuss options or work with the City to identify others, something she admittedly did not do. (SOF, ¶¶ 24, 26, 28; Ex. 16, Youngren Tr. 278:7-16; *see also* SOF, Ex. [], CFD000022250-51 (Reasonable Accommodation Policy).) (SOF, ¶ 12; Ex. 13 [Reasonable Accommodation General Order] and Ex. 14 [Reasonable Accommodation Policy] at CFD000022254 ("Employees with disabilities who need an accommodation are responsible for notifying the City of their disability and the need for an accommodation.") and Ex. 14 [Reasonable Accommodation Policy] at CFD000022255 (describing the interactive process.) The fact that she has worked full time as a paramedic for Trace Ambulance is a strong indication that she is capable of working as a paramedic, perhaps not even needing any accommodation. (SOF ¶ 34.)

Youngren faced a choice required of any litigant receiving an unconditional offer of reinstatement. She could continue to work as a full-time paramedic at Trace Ambulance or pursue the opportunity presented her under the terms of the Suspended Assignment Policy. She chose the former, maybe because of her subjective doubts of her physical capabilities or maybe because she no

11

longer wanted to work in a large urban area like the City of Chicago. The undisputed facts in this case show that she was concerned about the volume of calls and the physical requirements of being a CFD paramedic. (SOF ¶ 21.) Whatever her personal reasons, she was entitled to act on those concerns. *Ford,* 458 U.S. at 236 (plaintiff who chooses to stay at a better job "no longer suffers ongoing injury stemming from unlawful discrimination").

Moreover, Youngren's testimony is replete with evidence that she had no intention of accepting, or even evaluating in good faith, the City's unconditional Offer of reinstatement. This is seen in her communications with Plaintiff Griffin: "I'm worried about actually lifting on the street." and "I'm concerned about the call volume that they [CFD paramedics] do. I don't do that kind of call volume at Trace. That can also take a toll.") (SOF, ¶ 21.) For whatever the reason, she allegedly doubted her ability to work as a CFD fire paramedic, even though she was working full time at Trace and failed to inquire about possible accommodations. (SOF, ¶ 24, 34.)

Youngren's failure to mitigate began no later than March of 2017, when she had the opportunity to return to the Academy under the terms of the Suspended Assignment Policy. Youngren's accrual of backpay damages, if any, must toll effective March 27, 2017, when she unreasonably rejected the City's unconditional Offer for reinstatement.

## IV. CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court grant its motion for partial summary judgment and determine as a matter of law that: (1) the City made an unconditional offer of reinstatement to Youngren in March 2017, and (2) the unconditional offer of reinstatement tolls backpay or other benefit awards for Youngren, if any, as of March 2017, due to her unreasonable refusal of the City's Offer.

Respectfully submitted,
**CITY OF CHICAGO**

By: /s/ Robert T. Shannon

Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
(312)704-3000

13

1055296\313158235.v2