IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER LIVINGSTON, et al. | Case No. 16-C-10156 |
| Plaintiffs, | Judge Sara L. Ellis |
| vs. | Mag. Judge Young B. Kim |
| CITY OF CHICAGO, a municipal corporation | |
| Defendant. | |

**PLAINTIFF YOUNGREN'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO MARY YOUNGREN'S FAILURE TO MITIGATE**

Plaintiff Mary Youngren ("Youngren") submits this opposition to the City's motion for partial summary judgment on the City's affirmative defense of failure to mitigate.[1]

## I. Introduction

The City asks the Court to enter summary judgment against Youngren on its failure-to-mitigate defense, claiming that she refused "an unconditional Offer to reinstate" her. CM at 8.[2] But the City's "offer" to Youngren was not an unconditional offer of reinstatement under *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982), and, consequently, does not cut off her claim for back pay. *See* ECF No. 256 at 6 n.2, reported at 2020 WL 91274, at *3 n.2 (Jan. 7, 2020) (Slip Copy) (offer to co-Plaintiff Donna Griffin conditioned on obtaining medical clearance "does not seem

---

[1] ECF No. 616 is the City's refiled memorandum of law. There is no summary judgment motion filed.
[2] Citations are: City's Memorandum of Law, "CM at ___"; Joint Statement of Undisputed Facts to the Youngren motion (ECF No. 602-1), "SOF ¶__"; Joint Statement of Undisputed Facts to the motion directed at all *Livingston* Plaintiffs (ECF No. 604-1), "SOFL __"; exhibits to the Youngren motion (ECF No. 612-2 to 612-32), "DX__"; exhibits to the motion directed at all *Livingston* Plaintiffs (ECF No. 608-1 to 608-123 ), "DXL"; Youngren's exhibits, "PX__."

like 'a concrete offer of reinstatement' necessary to toll back pay") (citing *Ernst v. City of Chicago*, No. 08 C 4370, 2018 WL 6725866, at *12 (N.D. Ill. Dec. 21, 2018)).

Just like the City's offers to the *Ernst* plaintiffs, the March 2017 offer to Youngren was not a concrete offer of reinstatement. *See* PX 1 (side-by-side comparison of *Ernst* offers with the same offer to Youngren). The City did not offer Youngren a job. It invited her "to continue processing for the position" of a candidate Fire Paramedic on her first day of training, imposing at least five conditions antecedent to an offer to restart training, including passing the Paramedic Physical Abilities Test[3] and obtaining medical clearance. SOF ¶36. The email to Youngren states: "**THIS IS NOT AN OFFER OR GUARANTEE OF EMPLOYMENT. DO NOT TERMINATE YOUR CURRENT EMPLOYMENT.**" PX 1.

The City has not proved the elements of a *Ford Motor* defense:

*First*, the City cannot even decide when or how it made a purported "unconditional Offer to reinstate Youngren." On page three of its brief, the City concedes that the email "inviting her to continue processing for a paramedic candidate position" "was an invitation only, not yet a formal offer of reinstatement." CM at 3 n.3. But in its argument, it identifies that very "invitation only" as the purported "unconditional Offer." *Id.* at 8. The City has pled its way out of court.

*Second*, the City's position cannot be reconciled with *Orzel v. City of Wauwatosa Fire Dept.*, 697 F.2d 743 (7th Cir. 1983), which treats as *conditional* a job offer "conditioned upon … taking and passing a physical exam"; or with *Ernst*, 2018 WL 6725866, issued after a trial on the same *Ford Motor* defense. The City's attempts to distinguish *Orzel* and *Ernst* are futile.

---

[3] The five conditions antecedent to a concrete offer to retread were: 1) appear at initial processing with all required paperwork, 2) pass multiple drug tests, 3) clear the background investigation, 4) pass the PPAT, and 5) obtain medical clearance. The version of the PPAT that Youngren would have needed to pass in 2017 was not the same test she passed in 2015. Before 2017, the City hired a consultant to make the PPAT more difficult, including by doubling the number of stairs and adding a step test to the end of the stair climb. PX 4; DXL 26 at CFD000030806; SOFL ¶42.

2

*Third*, the City flagrantly misstates the facts. The City never offered to instate Youngren as a paramedic or return her to the position or status she was in when it ended her employment. Youngren does not claim that she "missed classes" in September 2015, and she was not in the academy when the City placed her on suspended assignment. CM at 2. To the contrary, Youngren went through the entire Foxtrot academy, which started on June 16, 2015 and ended on August 12, 2015. SOF ¶¶2, 17-18, 31; SOFL ¶14; DX 24; PX 2; PX 3. But because she did not pass the Step Test, the City refused to assign her to an ambulance and placed her on administrative leave. *Four weeks after the academy ended*, she retook the Step Test and suffered a crippling back injury. At that time (*not* during "the Academy"), the City told her she would only have to retake the Step Test, not redo the academy. DX 16 at 236:19-237:3; PX 5.

*Fourth*, a jury could conclude that Youngren's response to the City's processing invitation was reasonable. *See Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1203 (7th Cir. 1989) ("The accrual of damages for a discriminatory discharge is not terminated merely because the employee refuses an offer of reinstatement; instead, it is only 'an unreasonable refusal … [which] will preclude recovery of front pay'") (quoting *McNeil v. Econ. Lab., Inc.*, 800 F.2d 111, 118 (7th Cir. 1986) (alterations in original)). The City did not offer to restore Youngren to the position she was in when it discriminated against her, and she had a right to reject an invitation to redo training all over again. Further, a jury could also conclude that it was reasonable for her not to continue processing when she believed she was physically incapable of going through the academy again due to her back injury on the Step Test, and after the City falsely claimed she had "waived" PPAT practice. SOF ¶24; DX 16 at 284:13-15, 286:19-287:19; DX 22.

3

## II. Legal Standard

Summary judgment is only available when there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The question is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In answering that question, "the evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see Stewart v. Department of Transp.*, 2019 WL 2103387 (N.D. Ill. May 14, 2019) (Ellis, J.).

## III. Material Facts

Youngren is an experienced paramedic who entered the "Foxtrot" academy on June 16, 2015. SOFL¶91; DX 16 at 14:10-20. On August 4, 2015, CFD academy instructors issued Final Evaluations documenting that she met all academic, personal attribute, and professional behavior standards to graduate. DX 24; PX 6. Youngren met every CFD requirement except for the Step Test. *Id.*; SOF ¶31. When the Foxtrot class graduated on August 13, 2015, the City did not allow her to participate or assign her to an ambulance because she did not pass the Step Test. SOF ¶¶ 1, 31; DX 24-26; DX 16 at 197:14-18; DX 27 at 219:9-20; DXL 50 at 150:3-23.

The Step Test was a dangerous test invented by academy instructors and never validated. SOFL ¶¶145, 157-158. In 2014 and 2015, top CFD brass used the Step Test as a graduation requirement and terminated women who failed it. SOFL ¶¶136, 138-139, 170; DXL 52 at 143:19-144:5; DXL 31 at 42:8-43:16. The Step Test involved stepping onto and off of an 18-inch box,[4] holding a 25-pound weight in each hand, to the beat of a metronome set at 112 beats per minute, for two minutes without losing the beat. SOFL ¶42. Because Youngren could not pass

---

[4] PX 7 shows the height of the box. SOFL ¶153. Youngren is 5' 3" tall. DX 16 at 177:5-8.

4

the Step Test, the City placed her on administrative leave and directed her to do "extra training" with two other women and then take it again. SOF ¶31; DXL 50 at 150:3-23; 151:10-152:5, 177:16-20; DX 16 at 197:6-198:3; PX 15 at ¶17. The administrative leave consisted almost entirely of training on their own, plus two or three hours of working out in front of an instructor one day a week. DXL 50 at 151:13-23, 172:14-173:17, 175:10-17.

When Youngren re-took the Step Test after the academy ended, she made it to 1 minute and 48 seconds and then lost the beat and the instructor failed her. SOF ¶32; DX 28; DX 16 at 218:22-219:10. She suffered a crippling back injury during the retake. SOF ¶¶17-18; DX 16 at 225:16-228:20. The day after her retest, she was taken to the hospital by ambulance and admitted for four days for her back. DX 16 at 225:16-228:20; PX 8. The City then ended her employment, calling it "suspended assignment"[5] because she had not passed the Step Test. SOF ¶¶2, 31; DX 2. When it placed her on suspended assignment, the City told Youngren she would *not* have to redo the academy, just retake the Step Test. DX 16 at 236:19-237:3. Thus, her status was that she only needed to pass the Step Test before working as a paramedic. City business records confirm this status. PX 5 ("only needs to complete step-up"); DXL 30 at 123:19-125:24.

When Youngren was finally able to walk again, she returned to work at Trace Ambulance and has had an uninterrupted stream of mitigation earnings as a paramedic, EMS coordinator, and EMT lead instructor at Trace. SOF ¶34; DX 16 at 16:5-22.

In October 2016, Youngren joined eleven other Plaintiffs in filing this lawsuit. ECF No. 1. On December 8, 2016, Adrianne Bryant, CFD's director of human resources, asked for and obtained Youngren's personnel file with the suspended assignment notification. PX 9. The City

---

[5] "Suspended assignment" is a status applicable to candidates who miss more than five days in the academy. Under the policy, the City allows candidates who miss more than five days of academy training to "enter the next Academy class" subject to "all normal and customary hiring prerequisites." DX 2.

5

makes much of its suspended assignment policy,[6] but the City did not follow it when it invited Youngren to process. Per policy, the City was supposed to invite her for "the next Academy class" (DX 2), but it did not invite her to process for that class, which started on March 1, 2017, or apply "normal and customary hiring prerequisites" to her processing after that class started. SOF ¶4; DX 22. On Wednesday, March 8, 2017, the City sent Youngren an email directing her to report to the Quinn Fire Academy at 11 a.m. on Monday, March 13, 2017 "in order to continue processing for the position of probationary Fire Paramedic." DX 21; PX 1. The email states: **"THIS IS NOT AN OFFER OR GUARANTEE OF EMPLOYMENT. DO NOT TERMINATE YOUR CURRENT EMPLOYMENT."**[7] The processing invitation is not a job offer from the City. PX 11 at 622:5-623:4 (*Ernst* trial testimony of Bryant: "Q: And you understand that this [processing invitation] was a job offer to the plaintiffs; is that correct? A: No. Q: It's not a job offer? A: No .… Q from the Court: Why is it not a job offer? A: It's an invitation to process"); PX 12 at 36-37 (*Ernst* PX 156, testimony of Christopher Owen: "An actual offer of employment … means … you've gone through whatever processes that we have, including all preemployment process, you've cleared all the hurdles, and now we're saying, 'We're going to hire you.' That's what we consider to be an offer of employment."); PX 13 at 40-41 (*Ernst* PX 153, testimony of Monica Porter: "Q: When the people are being sent the offer to begin processing for hire, are those people guaranteed a job with the fire department? A: No. … [A]sking someone to process is not asking them to be hired.")

      The March 8 email instructs Youngren to bring a host of documents with her to initial processing, which the City uses to conduct background checks, and to wear "flats or low heels"

---

[6] As discussed below, the policy is irrelevant to Youngren's Title VII rights.
[7] The end of the email reiterates that warning, **"DO NOT TERMINATE YOUR CURRENT EMPLOYMENT."** *Id.* at 2.

6

and other business attire. PX 1. The email does not state that PPAT practice or testing would take place, and it is neither "normal" nor "customary" for the City to conduct PPAT practice at initial processing. PX 11 at 626-628; PX 16 at 12-14. After CFD sent the March 8 email to Youngren, one of the City's attorneys forwarded it to her attorneys, describing the processing invitation thus: "Ms. Youngren was notified of her opportunity to be considered for the upcoming paramedic Academy class." DX 21 at 2. Youngren replied through counsel that same day, rejecting the suggestion that she should have to redo the entire academy, objecting to the lack of notice and requirement to reprocess, noting that asking her to process "is not a bona fide offer of employment," and reserving all rights. *Id.* at 1. She asked the City to "Please respond quickly." *Id.* at 2. The City did not reply for almost three weeks. DX 22.

On March 13, Youngren went to the Quinn Fire Academy, with the documents she was instructed to bring. DX 16 at 280:16-21; PX 14. After waiting outside for about 30 minutes, she was invited in. She did not see any other applicants, and Bryant did not appear to be expecting her. PX 10 at ¶3; DX 16 at 280:22-281:10. Youngren explained she was there in response to the City's email but was confused about why, since she had been told she would not have to repeat the academy. DX 16 at 281:7-282:3. At the time, Youngren knew "that there was no way [she] could physically go through the academy," which included "[u]p and overs, burpees, carrying buckets of sand, [and] running on concrete for an extended period of time." DX 16 at 277. She made clear to Bryant that she was present and willing to process but had been told she would not have to repeat the academy. DX 16 at 280:16-282:8. Bryant did not process Youngren and did not say anything to her about the PPAT. DX 22; PX 10 at ¶3.

The City's next communication with Youngren about processing was on March 27, 2017, via a letter to her counsel from Alan Slagel, one of the City's attorneys, responding to her May 8

7

email. DX22. According to the City, Slagel's May 27 letter "reiterated [the] terms" of the March 8 processing invitation. CM at 8. Indeed, Slagel's letter reiterates each of the conditions Youngren would have to meet before the City would offer to rehire her:

> To enter the next paramedic class, Ms. Youngren must satisfy all of CFD's normal and customary hiring prerequisites. Specifically, these include: appearing for processing (at which time, drug tests will be administered), completing all required forms, taking the paramedic pre-hire physical abilities test, updating her background investigation, and completing an updated medical exam.

DX 22 at 1. The letter then claims that, on March 13, Youngren had forfeited the opportunity to participate in the PPAT orientation and practice test:

> Please note that Monday, March 13, 2017 was Ms. Youngren's opportunity for orientation as to the pre-hire paramedic physical abilities test. After this orientation session, applicants are provided eight weeks of training time, before they are required to take the paramedic pre-hire physical abilities test. Ms. Youngren declined the opportunity to familiarize herself with the equipment, or take a practice test.

*Id* at 1-2. After falsely claiming that Youngren "declined the opportunity" to practice the PPAT, the letter invites her to contact Bryant "no later than Monday, April 3, 2017" if she "wishes to continue being processed for the June 19, 2017 class outside of the settlement context" and reiterates that only "[u]pon successfully completing each of the steps outlined above" might Youngren "have the opportunity to enter into the paramedic training class[.]" *Id* at 2.

When Slagel sent the letter, the parties were engaged in settlement discussions with Judge Kim that continued to June 2018. SOF ¶ 26. The first face-to-face negotiating session was in 11 days. *See* ECF No. 35. Youngren tried to negotiate a hiring process and accommodations for her back during those discussions. SOF ¶26.[8] However, by 2018 she realized her back was not going to improve, and she would not be capable of working as a CFD paramedic. DX 16 at 276:21-278:6, 286:19-289:18. Therefore, she eventually decided to remain at Trace, where her primary

---

[8] The parties stipulated to paragraph 26 for purposes of summary judgment to narrow disputes and avoid further motion practice and litigation over the scope of the Local Rule 83.5 privilege. *See* SOF at 7 n.4.

8

work duties are as EMS coordinator and teaching in the EMT program. *Id.* at 17:8-15. She works only one or two 8 to 12-hour shifts a week on an ambulance for Trace, which has a lower call volume than CFD; and she receives assistance with lifting. *Id.* at 17:13-18, 28:3-22, 303:10-304:3 ("I had been at Trace forever, they do take care of me.")

## IV. Argument

### a. The City Did Not Make a *Ford Motor* Offer to Youngren, and Her Response to the Invitation to Process for the Academy Was Reasonable.

The City's theory for cutting off back pay is that it made a *Ford Motor* job offer by inviting Youngren to process for the paramedic academy, which stopped the accrual of back pay when she refused it. *See Ford Motor*, 458 U.S. 219. The Court should reject this theory because it is contrary to law. A valid *Ford Motor* defense requires an employer to prove that the plaintiff unreasonably refused a concrete, unconditional, and bona fide offer of employment for the same position. *See Graefenhain*, 870 F.2d at 1202-03; *Smith v. World Ins. Co.*, 38 F.3d 1456, 1465 (8th Cir. 1994); *Ernst*, 2018 WL 6725866 at *11-13 The City has failed to prove these elements.

*First*, the City's invitation to Youngren to process was not a job offer. It was an invitation to reapply (or "process") for a job, which is not an offer of the job. *Ernst*, 2018 WL 6725866 at *13 ("The 2014 offers to process, by their own terms, were not job offers"); PX 1 ("**THIS IS NOT AN OFFER OR GUARANTEE OF EMPLOYMENT**"); DX 21 ("Youngren was notified of her opportunity to be considered"); DX22 (March 8 email was an "invitation" to participate in "processing"); PX 11-13 (City employee testimony); *Nagarajan v. Tennessee State Univ.*, 187 F.3d 637 (6th Cir. 1999 (Table), 1999 WL 551360) (offer to allow re-application is not a job offer); *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1097 n.7 (5th Cir. 1994) (offer of interview is not a job offer); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 879 (11th Cir. 1986) (invitation to apply is not an unconditional job offer); *EEOC v. New Prime, Inc.*, No. 6:11-cv-

9

03367-MDH, 2015 WL 8757318, at *12 (W.D. Mo. Dec. 14, 2015) ("invitation to reapply," even coupled with a notice of a change in policy, does not toll the employer's back pay liability).

*Second*, the City's offer to process was conditional. *See Ernst*, 2018 WL 6725866 at *12-14; *Orzel*, 697 F.2d at 757 (offer that required plaintiff to pass a physical exam was conditional). Before receiving an actual offer to restart the academy, Youngren would have needed to pass drug tests, a background investigation, the PPAT and obtain medical clearance despite the condition of her back. SOF ¶36; DX 22. An offer to process conditioned on passing multiple pre-hire hurdles dictated by the employer is not a concrete offer of reinstatement that tolls back pay.[9] *Ernst*, 2018 WL 6725866 at *12-14; *Orzel*, 697 F.2d at 757; *Hogan v. Bangor and Aroostook R. Co.*, 61 F.3d 1034, 1038 (1st Cir. 1995) ("If [plaintiff] had taken and passed the FCE, he still had to proceed to further tests and if he cleared those he was required to obtain clearance from Dr. Sagall…. [Therefore, defendant] did not meet its burden of showing it made an unconditional job offer"); *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1485, 1493 (10th Cir. 1989) (offer conditioned on passing a polygraph, drug screen, and physical exam was not a *Ford Motor* offer); *Taylor v. Trees, Inc.*, 58 F. Supp. 1092, 1102 (E.D. Cal. 2014) (an unconditional offer must have "no other considerations or contingencies"); *Dunlap v. Liberty Nat. Prod., Inc.*, No. 3:12-CV-01635-SI, 2013 WL 6177855, at *15 (D. Or. Nov. 25, 2013) (offer of reinstatement requiring medical release was conditional).[10]

---

[9] To prove a failure to mitigate, the defendant must show a reasonable likelihood that the plaintiff would have found other employment. *See Hutchinson v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994). However, the City identifies no undisputed evidence that Youngren would have passed the PPAT or obtained medical clearance despite her central spine stenosis. *See* PX 17; DX 20 at 104-110.

[10] The City cites two out-of-circuit cases for the erroneous proposition that its offer was unconditional. *See* CM at 7-8. Judge Pallmeyer found that they were "highly factually-specific" and declined to follow them, *see* 2018 WL 6725866 at *13 n. 24 (declining to follow *Clarke v. Frank*, 960 F.2d 1146 (2nd Cir. 1992), or *Morris v. American Nat'l Can Corp.*, 952 F.2d 200 (8th Cir. 1991)), and this Court should reject them for the same reasons. The City also cites *Grace v. City of Detroit*, 216 Fed. Appx. 485 (6th Cir. 2007), an unpublished, out-of-circuit *per curiam* decision in a right-to-travel, not Title VII, case. The case

*Third*, Youngren is at least entitled to a jury trial on the issue of whether her response to the City's processing invitation was reasonable. *See Ernst*, 2018 WL 6725866 at *8-11 (describing *Ernst* plaintiffs' similar responses to the City's offers to process), *14 (finding that those responses were reasonable). On March 8, 2017, Youngren had not heard from CFD for 18 months. DX 2; DX 16 at 239:12-241:13. She replied to the City's email right away, asking for clarification on why she was being asked to reprocess but received no response. DX 21. Despite the lack of notice and information, she appeared on March 13 ready to process. DX 16, 280:16-21. Then, the City informed her that, before being allowed to work as a paramedic, it was going to make her redo the entire academy, reneging on a previous promise that she would only have to pass the Step Test. *Id.* at 281:11-282:8. The City decided not to process her and did not give her any "opportunity" related to the PPAT. DX 10 at ¶3.

Two weeks later, the City belatedly replied to Youngren's March 8 email, confirming that the offer was for an "opportunity" to redo the entire academy and stating that it would deny her the PPAT practice and test run provided to all other applicants (claiming she had "waived" such a chance on March 13, even though no one mentioned anything about the PPAT that day). DX22. The City also did not explain what physical training activities she would be expected to perform in the academy (i.e. whether it would include the usual exercises – long distance running, "up and overs," and burpees – which she did not believe her back could tolerate). *Id.*

Under these circumstances, a jury could find that Youngren's response to the City's March 8 email and Slagel's March 27 letter was reasonable.[11] *First*, a jury could find that she

---

is not about *Ford Motor,* because the defendant there never made any offer at all. By its express terms, *Grace* is limited to its facts. *See* 216 Fed. Appx. at 494 ("*We limit the ruling* that the plaintiffs must have reapplied to the defendant in order to have satisfied their duty to mitigate *to the facts of this case*") (emphasis supplied).

[11] The City argues that Youngren has the burden of proof on the issue of reasonableness, citing an out-of-circuit district court case. *See* CM at 10. That argument is contrary to well-settled law providing that the

11

was reasonable in refusing an "opportunity" to retread the academy. In fact, the Court would be correct to find that she had a legal right to reject this "opportunity." Title VII's remedial goal is to restore victims of discrimination to the position they would have been in but for the unlawful discrimination. *Ford Motor*, 458 U.S. at 230 (citing *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)). The City's invitation here would not have done that. The City discriminated against Youngren when the Foxtrot academy ended, when it used the Step Test to refuse to let her work as a paramedic. SOF ¶31. The City never offered to restore her to that same position by offering her the job of paramedic. Instead, the only invitation was to reprocess her to repeat the entire academy, if she managed to make it through the entire hiring process. But the City cannot cut off damages by forcing the victim to retread. That is punitive, not remedial, and Youngren had right to reject that "opportunity."

*Second*, a jury could find that the steps Youngren took in response to the City's offer to process were reasonable. She appeared for processing on short notice, documents in hand, even though the City had not explained why she was being sent. SOF ¶24. The City then chose not to process her when she was there, never followed up for three weeks, and then sent her a letter telling her she would have to appear again and would have to take the PPAT with less than the normal 8 weeks to prepare and no chance to orient herself on the equipment and take the practice test. PX 10 at ¶3; DX 22. Under these circumstances, a jury could find that it was reasonable for Youngren to decide to attempt to negotiate her rehire conditions and ADA accommodations for her back in the Court-supervised settlement discussions. SOF ¶26; *cf. Ernst*, 2018 WL 6725866 at *8-11, 14 (describing how four of the five *Ernst* plaintiffs did not follow through on the City's

---

defendant has the burden of proving a failure-to-mitigate defense, including that the plaintiff failed to exercise reasonable diligence. *See Hutchinson*, 42 F.3d at 1044. Regardless, even if the City had made a concrete job offer, which it did not, and even if Youngren bore the burden of proof, which she does not, she would be entitled to a jury trial on the issue of her reasonable refusal to process further.

processing invitations, including two who were denied the opportunity to participate in PPAT practice or take a retest, and finding that all five plaintiffs' responses were reasonable).

*Third*, a reasonable jury could also conclude that the offer to process as reiterated in the City's March 27 letter was not bona fide. The City contacted Youngren at the last minute, after failing to call her for the class that was already in the academy, then refused to process her, then failed to respond to her inquiries for three weeks, and even then falsely stated to her that she had "waived" normal PPAT procedures even though Bryant did not say one word about the PPAT while she was there. PX 22; PX 10 at ¶3. In fact, the City has offered no evidence that the PPAT test vendor was even at the Fire Academy on March 13 to test Youngren. With all of this context, a jury could reasonably conclude that Youngren did not believe the City was really offering her a job and that the offer was not bona fide. PX 10 at ¶5.

*Fourth*, the City can hardly prove that Youngren acted unreasonably based on musings about the reasons she might have stopped processing. *See Graefenhain*, 870 F.2d at 1202-03 ("the trial court must consider the circumstances under which the offer was made or rejected, including the terms of the offer and *the reasons for refusal*") (quoting *Claiborne v. Illinois Central R.R.*, 583 F.2d 143, 153 (5th Cir. 1978) (emphasis supplied)). The City speculates that Youngren chose not to process further because of "subjective doubts of her physical capability" of doing the job. CM at 11-12. That speculation misstates the evidence yet again. There is no undisputed fact that Youngren believed she was unable to do the job of CFD paramedic in 2017. The City cites only a single text from 2016 with no connection to the processing invitation and her interactions with the City *in 2018*. CM at 2, 4. The evidence shows that, in 2017, she doubted she could *get through the academy*. SOF ¶24; DX16 at 277 ("I knew that there was no way that I could physically go through the academy, so what was the point of me taking the PPAT?") And

13

even if this were her only reason for not continuing to process, ignoring other evidence, the law does not require Youngren to forfeit backpay for not pursuing training she reasonably believed she could not perform due to a crippling injury suffered taking the City's discriminatory test.

A reasonable jury could find that Youngren acted reasonably.

### b. The City's Suspended Assignment Policy Does Not Dictate Youngren's Title VII Rights

Youngren is suing under Title VII as a discrimination victim, not for reinstatement under the City's suspended assignment policy. Contrary to the City's argument, Title VII, not City policy, dictates her rights. Her status as a purported "candidate" on suspended assignment is irrelevant. It does not set or impact her rights, or obligations, or even relate to a *Ford Motor* offer (which, if done unconditionally, is admitted as an offer of the job lost to cut off damages, not the implementation of an employer policy). The City's suspended assignment policy has nothing to do with the mandatory elements of a *Ford Motor* defense, which apply the same way no matter what status a plaintiff is in, or what hiring (or reinstatement, or promotion, or return-to-work) conditions the employer normally applies. *See Ford Motor*, 458 U.S. at 219 (rejected applicants); *Ernst*, 2018 WL 6725866 (same); *Hogan*, 61 F.3d at 1034 (employee denied medical clearance to return to work); *Orzel*, 697 F.2d at 743 (involuntarily retired employee); *Graefenhain*, 870 F.2d at 1198 (discharged employees). To toll back pay here, the City was required to make a concrete and unconditional offer to Youngren to work as a CFD paramedic—and it did not.

Also, the City was not even acting pursuant to its own suspended assignment policy. It skipped over Youngren for the March 1, 2017 class, *and there is even evidence this was intentional*. PX 9 (Bryant email from December 2016 obtaining Youngren's personnel file). Then, the City denied her the normal PPAT procedures and said she would have to pass on the first attempt with no practice and only a few weeks to train. DX 22. The City's argument that

14

Youngren should forfeit her Title VII damages because her rights are "governed by" City policy when it did not even act pursuant to or follow its own policy is risible.

### c. The City's Attempts to Distinguish *Orzel* and *Ernst* Are Futile.

*Orzel* holds that an offer of reinstatement "expressly conditioned upon [the plaintiff's] taking and passing a physical exam" was conditional and he had a right to refuse it. 697 F.2d at 757. *Ernst* rejects a *Ford Motor* defense based on the same processing invitations. The City's attempt to distinguish these cases (CM at 8-10) is ineffectual. Youngren was not "participating in [the Academy]" when she retook the Step Test and was not "given the opportunity to return exactly where she had left off." *Orzel* is not distinguishable on the basis that the City "had every reason to require [a medical evaluation] under its Suspended Assignment Policy." The City can require what it wants—but those requirements mean it did not make an unconditional reinstatement offer. Finally, the *Ernst* stipulation that the plaintiffs would have been hired in 2005 "but for discrimination" was hardly a "focal point" of Judge Pallmeyer's decision. Instead, she identified it as one factor, along with several others, to reject the City's argument for a "public safety" exemption to the *Ford Motor* unconditional offer requirement. *See* 2018 WL 6725866. Here, where Youngren had actually gone through the whole hiring process and finished the entire academy, there is even *less reason* to allow the City to wriggle out. SOF ¶31.

### V. Conclusion

For the above reasons, the Court should deny the City's motion for partial summary judgment on its failure-to-mitigate defense to Youngren's claims.

Respectfully submitted,

 /s/ *Marni Willenson*
Marni Willenson

15

Marni Willenson
marni@willensonlaw.com
WILLENSON LAW, LLC
3420 W. Armitage Ave., Suite 200
Chicago, IL 60647
312.508.5380

Christopher J. Wilmes
cwilmes@hsplegal.com
Charlie D. Wysong
cwysong@hsplegal.com
Justin Tresnowski
jtresnowski@hsplegal.com
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison St., Suite 4000
Chicago, IL 6060
312.580.0100

Attorneys for Plaintiff