IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jennifer Livingston, et al., | |
| Plaintiffs, | Case No. 16-cv-10156 |
| v. | Hon. Sara L. Ellis |
| The City of Chicago, a municipal corporation, | Magistrate Judge Young B. Kim |
| Defendant. | |

**THE CITY OF CHICAGO'S REPLY TO
YOUNGREN'S RESPONSE TO CITY'S PARTIAL
MOTION FOR SUMMARY JUDGMENT ON FAILURE TO MITIGATE**

The City of Chicago ("the City") submits this Reply to Plaintiff Mary Youngren's Response to its motion for partial summary judgment on the issue of mitigation of damages:

## I.   INTRODUCTION

This matter is before the Court on the City's partial motion for summary judgment on whether Plaintiff mitigated her damages when she refused the City's efforts to return her to the Academy, and whether it was reasonable for Plaintiff to have rejected these efforts, remain employed elsewhere and still seek damages on her claim. While the parties do not dispute the facts material to these questions, each casts them differently. In the Plaintiff's opinion, the City should have immediately made her a paramedic even though she never graduated from the Academy and had been away from it for a year and a half. The City's position, supported by past practice, is that Plaintiff's reinstatement was controlled by its Suspended Assignment Policy, the same policy that provided Plaintiff with leave following her injury. The City should be allowed to follow its Suspended Assignment Policy, and not rewrite it to create a new benefit for Plaintiff.

## II. FACTS RELEVANT TO THE POSITION OF THE PARTIES

Youngren was injured during training for the Step Test in September of 2015 and was placed on suspended assignment at that time. (YSOF ¶¶ 2-3, 17-18).[1] Shortly thereafter, she returned to a full-time employment with Trace Ambulance. (YSOF ¶¶ 19-20; 34; Pl Brief, Dkt. 620, p. 5 *citing* Youngren Tr. 16:5-22). Youngren has worked continuously for Trace Ambulance since 2016 as a paramedic and also as an EMS Coordinator and EMT lead instructor. (YSOF ¶¶ 19-20; 34; Pl Brief, Dkt. 620, p. 5 citing Youngren Tr. 16:5-22).

One and a half years after her injury, the City contacted Plaintiff on March 8, 2017, with an offer to return her to the Candidate Paramedic position she had held pursuant to the Suspended Assignment Policy. (YSOF ¶ 22; Dkt. 612-22 [Ex. 21], pp. 3-4). This initial offer from the City stated that Plaintiff should not leave her present employment (and she did not) as she processed for a possible return. (YSOF ¶22; Dkt. 612-22 [Ex. 21], pp. 3, 6). While Plaintiff's counsel initially questioned the March 8th communication, Plaintiff reported for processing on March 13, 2017, and brought requested documents. (YSOF ¶¶ 22, 24; Dkt. 612-22 [Ex. 21], pp. 1, 3, 6).. Dkt. 612-22 [Ex. 21], p. 1).

Youngren stopped processing after she arrived at the Academy on March 13, 2017. (YSOF ¶ 24). She states, among other things, that Adrienne Bryant did not appear to be expecting her on March 12, 2017 and she felt she should not be required to go through the Academy again as required by the Suspended Assignment Policy. (Pl. Brief, p. 7 at Dkt. 620; YSOF ¶¶ 3, 24). She further decided that she could not complete the Academy again even though she was not required to take a step test. (YSOF ¶ 24). She did not seek any accommodation at that time. (YSOF ¶ 24).

---

[1] The City will cite the Joint Statement of Facts for the Youngren Motion for Summary Judgment, Dkt. No. 602-1 "YSOF" & the Joint Statement of facts from the main Livingston Motion for Summary Judgment, Dkt. No. 604-1 as "LSOF".

Plaintiff points to PX 5, a new exhibit upon which she should not be permitted to rely, as proof that she did not need to return to the Academy. Plaintiff does not offer any evidence about this form, its purpose, or the meaning of the language on it. On its face, the document appears to be a list of Candidate Paramedics on Suspended Assignment, their dates of hire and medical lay-up, and other information, such as comments and secondary disposition. PX 5 (Dkt. 620-2). While someone noted that Youngren "only needs to complete step-up," there is also a reference to her returning to an Academy class, perhaps in 2016. PX 5 (Dkt. 620-2). In addition to the reasons set forth above, it should be disregarded as completely lacking in foundation.

The City followed up with Plaintiff's counsel on March 27, 2017, in a formal communication about its offer to return Plaintiff to a Candidate Paramedic position under the Suspended Assignment Policy. (YSOF ¶ 22; Dkt. 612-23 [Ex. 22 letter of 3/27/17). The City made it clear that Plaintiff's return to CFD required her to comport with the policy that allowed her to take leave in the first instance. (YSOF ¶¶ 22-25; Dkt. 612-23). Plaintiff did not take any further steps to return to CFD's employ; yet she remarkably claims that, as of September 4, 2018, she was seeking reinstatement. (YSOF ¶¶ 25, 30). Just a few days after that, Plaintiff informed the City in writing that her back injury prevented her from doing the job of a CFD paramedic. (YSOF ¶ 27).

The premise of Plaintiff's arguments is two-fold. First, she should not have to follow the Suspended Assignment policy and that CFD should have returned her to the position of Paramedic on day one. (Resp. 9). Second, the City's use of its Suspended Assignment Policy spelled out in its letter of March 27, 2017, made the offer conditional. (Dkt. 620, pp. 8-9; See YSOF ¶ 22 and Dkt 612-23 [Ex. 22]).

The problem with her analysis is that she was not a Paramedic at the time of her injury. She was a Candidate Paramedic. When she hurt her back, she was placed on Suspended Assignment. (YSOF ¶¶ 2-3). Returning her to the CFD as a Candidate Paramedic under the Suspended Assignment

3

Policy was the position which Plaintiff had held at the time of her injury. The City's March 27, 2017, letter *was* the unconditional offer to return from suspended assignment and reiterated and reinforced the information in the initial March 8, 2017 invitation to process. Ultimately, adhering to this policy would allow her to become a Chicago Paramedic, just like any other Candidate Paramedics who were injured during training.

Plaintiff does not explain why the Suspended Assignment Policy should not apply to her or why the City must abandon it. Surely, attending the Academy was reasonable for someone absent for this extended period of time. (See, i.e., YSOF ¶2). Moreover, the City was well within its rights, if not its obligations to the protect the public it serves, to require Plaintiff to obtain medical clearance and pass a validated PPAT for this safety-sensitive position. (YSOF ¶¶ 7-9; LSOF ¶¶ 34-38). She had suffered a back injury and her health care providers had diagnosed her with other spinal problems. (Dkt. 620-3 marked as PX 17 (pp. 1, 3). Under these circumstances, it was unreasonable for the City to immediately place Plaintiff in an ambulance handling emergency calls, nor would it have been reasonable for Plaintiff to work in that ambulance unsure of her own physical ability to do the job.

## IV. ARGUMENT

### A. The City Made an Unconditional Offer and Satisfied *Ford Motor*

As Plaintiff notes, the *Ford Motor* defense requires an employer to make a "concrete, unconditional, and bona fide offer of employment for the same position" the employee previously had held. (Dkt. 620, p. 9). That requires an answer to the question as to what position the Plaintiff held at the time she left under the Suspended Assignment Policy. Plaintiff asserts she is entitled to begin immediately as a Paramedic, but she was never in that position. Plaintiff left as a Candidate Paramedic governed by the terms of a Suspended Assignment Policy. (YSOF ¶¶ 2-3). That is the position to which she was eligible to return – a position that required adherence to reasonable prerequisites, especially given Plaintiff's lengthy leave and back injury and spinal disease.

4

Plaintiff's theory puts the City in the untenable position of placing a job candidate into a Paramedic position for which she may no longer be qualified or medically cleared to hold. It also places Plaintiff in a *better* position than when she left, because she could skip the requirements applicable to all others on suspended assignment.

None of Plaintiff's cited authority supports Plaintiff's unique theory. *See, i.e., Nagarajan v. Tennessee State Univ.,* 187 F.3d 637 (6th Cir. 1999) (Plaintiff, an associate professor, was denied tenure status in 1988 and told his status was deferred because his application was jumbled and unprofessional. Plaintiff sued under Title VII. TSU then offered him the chance to reapply for tenure. The offer was insufficient to limit damages for even if he re-applied, there was no guarantee he would receive it); *EEOC v. Manville Sales Corp.,* 27 F.3d 1089, n. 7 (5th Cir. 1994) (damages jury instruction based on *Ford Motor* was in error because offer to interview was not the same as an offer of employment); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 857, 879 (11th Cir. 1986) (Plaintiffs offered chance to apply for unspecified number of job openings did not satisfy *Ford Motor*); *EEOC v. New Prime, Inc.,* 2015 U.S. Dist. LEXIS 16656 at *43 (W.D. Mo. Dec. 14, 2015) (employee did not receive an unconditional offer of employment merely by hearing about a change in hiring policies and offer to reapply). None of the cases support Plaintiff's position as she was provided with a concrete offer to return to her former position. It was not an offer of an interview or an offer to apply for open positions or even to the prior job.

Plaintiff also references other inapplicable cases, including *Hogan v. Bangor and Aroostock R. Co.*, 61 F.3d 1034 (1st Cir. 1995) as that case involved a disagreement over Plaintiff's fitness for duty after he suffered a collapsed lung. The employer's offer of a functional capacity test designed for him in that case was not an unconditional offer because there was no guaranty that he would be returned to work if he passed. That is not similar at all to the Plaintiff's position. *Toledo v. Nobel-Sysco, Inc.,* 892 F.2d 1481, 1485 (10th Cir. 1989) also is distinguishable. In that case, the job candidate was denied an

offer because, among other things, his use of peyote for religious reasons. During litigation, the employer made several offers of employment to candidate, conditioned either on stopping or changing his use of peyote and dropping his claims. The fact that it was clearly conditional distinguishes it from this case. The reference to the possibility of a return contained in voice mail messages shows that *Taylor v. Trees, Inc.,* 58 F.Supp. 1092, 1102 (E.D. Cal. 2014) also provides no support. Finally, in *Dunlap v. Liberty Nat. Prod., Inc.,* 2013 WL 6177855, at *39-42 (D.Or. Nov. 25, 2013), the fact that an employer sought a medical release from employee with permanent work restrictions before considering her for her former position made the offer conditional.

None of Plaintiff's cases deal with job candidates returning from an extended ?leave of absence and governed by a public employer's return-from-leave policy. None involve safety-sensitive, emergency services positions that require specialized training, physical fitness and medical clearance before the employee staffs an ambulance responding to medical emergencies. LSOF ¶¶ 18, 25, 27.

Similarly, Plaintiff can find no refuge in either *Ernst v. City of Chicago*, 2018 U.S. Dist. LEXIS 215340, (N.D. Ill. Dec. 21, 2018) or in *Orzel v. Wauwatosa Fire Dep*t., 697 F.2d 743 (7th Cir. 1983). In *Ernst,* on remand, the parties stipulated that, "but for discrimination, each Plaintiff would have been hired as a firefighter paramedic on April 1, 2005." Id. at *6. The City invited the five plaintiffs to re-start the process for paramedic positions after the PAT had been replaced. 2018 U.S. Dist. LEXIS 215340, *18-19. However, the District Court held that these invitations were not unconditional offers as they were at odds with the stipulation. No similar stipulation nor such facts exist here.

The same result follows when *Orzel* is analyzed carefully. In that age discrimination case (involving mandatory retirement), the Department had conditioned the plaintiff's return to work on a medical evaluation, despite the fact he just recently underwent one and had passed "with flying colors." Id. at 757. Moreover, the Department indicated that it planned to terminate plaintiff as soon as it felt it had the legal right to do so and had refused to commit to an earlier resolution that plaintiff had

6

asserted he had accepted. *Id.* All of these unique circumstances, which are not presented here, led to the court's finding that the offer was conditional and the plaintiff's rejection of it was reasonable. *Id.* Given all of these distinguishing facts, they do not support the Plaintiff's position.

### B. The Plaintiff Should be Bound By Her Own Choices

The second question before the Court is whether Plaintiff acted reasonably when she decided to stay at Trace Ambulance rather than return to the City under its Suspended Assignment Policy. To be clear, the City had told her not abandon her current employment until the processing for the Academy was complete. (Dkt. 612-23, p. 7 [Ex. 21]). She could have followed the steps of the Suspended Assignment Policy while remaining at Trace Ambulance. After processing was complete, she could return to the Academy without taking any further tests and become a CFD Paramedic. See LSOF ¶ 171.

Plaintiff had a choice, and ultimately decided to stay with Trace Ambulance. At Trace, she was an EMS Coordinator, EMT lead instructor and paramedic with Trace Ambulance. (YSOF ¶ 34; DX 16 at 16:5-22). A reasonable assumption is she weighed the respective benefits of each position and determined which role was best for her. While she parses out anomalies to the City's invitation to process on March 8, 2017, the City made clear in its March 27, 2017, correspondence that her return was governed by its Suspended Assignment Policy. (YSOF ¶¶ 22, 24-25). The City should not be required to supplement any wage differential by virtue of her decision to remain employed by Trace Ambulance and abandon the opportunity to become a CFD paramedic.

### IV. CONCLUSION

For all of the reasons stated herein and in its legal brief supporting its motion for summary judgment, the City's partial motion for summary judgment should be granted.

Respectfully submitted,

**CITY OF CHICAGO**

/s/Robert T. Shannon
One of Defendant's Attorneys

Robert T. Shannon
Tom H. Luetkemeyer
V. Brette Bensinger
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
(312)704-3000